**Elbert BLANGO, Appellant,**

v.

**UNITED STATES, Appellee.**

**James R. BLANGO, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 8281, 8388.**

District of Columbia Court of Appeals.

Argued Jan. 16, 1975.

Decided March 26, 1975.

Frederick J. Sullivan, Washington, D. C., appointed by this court, for appellant Elbert Blango.

Richard D. Stanzione, Washington, D. C., appointed by this court, for appellant James R. Blango.

Raymond J. Coughlan, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin, John P. Hume, and Richard N. Stuckey, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and KERN and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

Appellants were indicted for assault with intent to kill while armed (D.C.Code 1973, §§ 22–501, 22–3201), assault with intent to kill (D.C.Code 1973, § 22–501), assault with a dangerous weapon (D.C.Code 1973, § 22–502), and carrying a pistol without a license (D.C.Code 1973, § 22–3204). They were convicted by a jury of the last two offenses and this appeal followed involving four alleged errors: (1) that the prosecutor impermissibly commented on the failure of the appellants to testify; (2) that the trial court's direction to the jury to continue deliberation constituted coercion when given after the court had received the jury's partial verdict; (3) that the trial court erred in refusing to dismiss the indictment against appellant Elbert Blango upon the basis of asserted deficiencies in

the proceedings before the grand jury; and (4) that there was insufficient evidence to support the convictions of appellant Elbert Blango. Finding no reversible error, we affirm.

The record shows that on Sunday, September 9, 1973, one George Hart entered a carry-out known as "This is the Place" at 2916 14th Street, N.W. Other customers were in the store, including two brothers, Elbert and James Blango, the appellants in this case. A few minutes after entering, Hart was accused of brushing or touching one of the women in the shop, the sister of the appellants. Hart was then attacked by both appellants. Throughout the developing brawl, Hart did not attempt to use an unlicensed small caliber pistol which he had in his pocket. As he was knocked to the floor he heard either the owner of the carry-out or an employee, admonish him to rid himself of his pistol. In response Hart removed the pistol from his pocket while still on the floor and held it out in a gesture of compliance. Appellant Elbert Blango, however, grabbed the pistol, tossed it to his brother James and shouted at him to kill Hart with it. While Hart and Elbert Blango were still scuffling on the floor, James Blango held the pistol to the calf of Hart's leg and fired. He then fired two more shots, one in each buttock, before Hart was able to escape.

■■ Appellant James Blango's first assignment of error is that the prosecutor in his closing argument impermissibly commented upon the failure of appellants to testify. The statements which appellant James Blango asserts are prejudicial are:

Certainly, George Hart is a witness in this case, and he has offered evidence from the stand. He had the courage to take the stand and to raise his hand and to testify under oath. . . .

. . .

Mr. Hart got on that stand, under oath, and told you, ladies and gentlemen, "Yes, it was my gun." He didn't indicate that he had a license to carry it or anything like that. No indication that his act was legal. But at least he had the guts to get on that stand and tell you all about himself.

He testified for quite some time. We don't pass Mr. Hart off as an angel, terribly enviable figure, but at least, ladies and gentlemen, he had the guts to get up and tell you what happened. . . .

No objection was registered on behalf of either appellant during the prosecutor's rebuttal. After its completion, however, the trial court, sua sponte, questioned whether the prosecutor's argument could have been viewed by the jury as a comment on appellants' silence at trial. After a recess, a motion for a mistrial was made on behalf of appellant James Blango while appellant Elbert Blango opposed the mistrial as did the government.

We do not believe that the argument of the prosecution was outside the bonds of permissible advocacy. Viewed in light of the facts of this case, the prosecutor's statements were not "manifestly intended or [were] of such character that the jury would naturally and necessarily take [them] to be a comment on the failure of the accused to testify." Peoples v. United States, D.C.App., 329 A.2d 446, 450 (1974); United States v. Follette, 418 F.2d 1266, 1269 (2d Cir. 1969), cert. denied, 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970); Doty v. United States, 416 F.2d 887, 890 (10th Cir. 1969).

Hart was the only prosecution witness who testified as to the circumstances of the shooting itself; the government's case, therefore, would stand or fall on the jury's assessment of Hart's credibility. It is apparent from the record that appellants' defense consisted primarily of an attack on Hart's credibility. Appellants stressed in their cross-examination of Hart and their arguments to the jury that Hart was shot with his own gun, a gun which he had taken into the carry-out illegally; that he had been less than candid about his ownership

of the gun in his testimony before the grand jury; that he had twice been convicted of a felony. They emphasized that Hart's story was not only uncorroborated but inherently incredible.[1] The defense also contended that Hart was endeavoring to protect himself from a charge of carrying a pistol without a license. In this context, the statements by the prosecutor were merely an attempt to rehabilitate Hart after the attack made on his testimony. Hence, the jury would not "naturally and necessarily" draw an adverse inference against the silent defendants.[2]

In addition, the court emphasized in its instructions to the jury that the defendants had an absolute right not to testify. We conclude that the prosecutor's comments to the jury did not constitute reversible error.

 Appellant James Blango next alleges that it was error for the trial court to instruct the jury to continue its deliberations after a note was received from the jury which mentioned that one of the jurors did not believe the testimony of Mr. Hart, the complainant. Upon receipt of the note, in which was also included the fact that the jury had reached unanimous verdicts as to the counts of assault with intent to kill while armed and assault with intent to kill, the court showed the note to counsel and asked for their opinions. Counsel for Elbert Blango suggested that "we take the partial verdict and then ask them to go back." Since no objection was raised on the part of either party, the court acceded to the suggestion, instructing the jury:

.　.　.　.　.　.

. . . [Y]ou ladies and gentlemen have only been deliberating approximately a little over two hours, and we are

going to ask you to continue your deliberations.

.　.　.　.　.　.

Bear in mind . . . that you are never to reveal to any person, not even to the Court, how the jury stands numerically or otherwise on the question of the guilt or innocence of the accused until after you have reached a unanimous verdict.

Appellant James Blango asserts that these instructions amounted to coercion of the jury to find a verdict of guilty.

The legal principles to be considered are well established. The court may not ask the jury how they are divided, Burton v. United States, 196 U.S. 283, 307–08, 25 S. Ct. 243, 49 L.Ed. 482 (1905). *See also* Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). However, even absent an inquiry from the trial court, potential coercion of minority jurors has been found where a trial court has given an anti-deadlock charge with knowledge of how the jury is divided. *See, e. g.,* Jenkins v. United States, 380 U.S. 445, 85 S. Ct. 1059, 13 L.Ed.2d 957 (1965); Jones v. Norvell, 472 F.2d 1185 (6th Cir.), cert. denied, 411 U.S. 986, 93 S.Ct. 2275, 36 L.Ed. 2d 964 (1973). In the *Jenkins* case the Supreme Court set down the standard that the judge's statement must be viewed in its context and under all the circumstances of the case to determine whether it was coercive. 380 U.S. at 446, 85 S.Ct. 1059 at 1060. Using this standard and upon a review of the record, we conclude that the judge's statement was not coercive and, indeed, was entirely proper under the circumstances. This is not a case such as *Jenkins* where the trial court instructed the jury that "You *have got* to reach a decision in this case" *id.* (emphasis supplied),

---

1. Hart testified that he had awakened early and was on his way to Mass when he stopped at the carry-out to get some food.

2. Indeed, the trial judge so found:
I am completely satisfied that the prosecutor's argument was directed to an associa-

tion that related to Mr. Hart, with a background not of the best or the highest. He took the stand and testified, and that any reflection from that, with regard to the defendants who had not taken the stand, was not intended, nor does it necessarily follow.

nor as Jones v. Norvell, *supra*, where the trial court stated, *"it is your duty* to reach a verdict if you can possibly do so—you 12 people are the only ones that can do it." (Emphasis supplied.) Rather, here the court merely instructed the jury to "continue your deliberations." There is no suggestion that the trial judge intimated impatience or displeasure with the jury by his instruction, facial expression, or tone of voice. We do not believe that the judge's action was coercive. In our view it was entirely proper for him to ask the jury to continue its deliberations. Further, the sending back of the jury was suggested by counsel for one defendant and neither counsel objected to the judge's statement to the jury although there was opportunity to do so.

■ Appellant Elbert Blango asserts that the trial court should have dismissed the indictment against him on the basis of asserted irregularities before the grand jury. In support of his argument he points out: (1) that complainant Hart and one of the police officers failed to tell the grand jury that the pistol used in the shooting was Hart's; (2) that Hart, in response to a question by a juror, had told the grand jury that appellant James Blango's "particular job was robbery, drunk, or interfere with elderly people in the street, yoke them, take their money from them"; and (3) that during the proceedings, the prosecutor, in passing, referred to another case against appellant Elbert Blango scheduled apparently for presentation to the grand jury later that same day.

The objections are not that there was insufficient evidence before the grand jury to support the indictment. Rather the objections are directed to two aspects of the complainants' testimony and an asserted prejudicial statement by the prosecutor. Assuming there was some impropriety in those three instances, we are cited to no relevant authority, and we know of none, to support the proposition that the trial court erred in refusing to dismiss the indictment. Costello v. United States, 350

U.S. 359, 362–63, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

In reviewing the early function and history of the grand jury, Justice Black observed in the *Costello* opinion that

. . . grand jurors could act on their own knowledge and were free to make their presentments or indictments on such information as they deem satisfactory. . . . And in this country as in England of old the grand jury has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor. *Id.* at 362, 76 S.Ct. at 408.

Later the Supreme Court observed in Lawn v. United States, 355 U.S. 339, 349–50, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958):

"If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. . . . An indictment returned by a legally constituted an unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits. . . ." [Quoting from Costello v. United States, 350 U.S. 359 at 363, 76 S.Ct. 406 at 408, 100 L.Ed. 397 (1956).]

The same principles have been applied in this jurisdiction and are applicable to the case at bar. Coppedge v. United States, 114 U.S.App.D.C. 79, 83, 311 F.2d 128, 132 (1962), cert. denied, 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963). There was adequate evidence upon which the grand jury could have relied to return its indictment. The existence of the questioned evidence or the asserted prejudicial statement is legally insufficient to invalidate the grand jury's action. In United States v. Fox, 425 F.2d 996 (9th Cir. 1970), the court rejected a motion to dismiss an indictment where the defendant claimed that the prosecutor misrepresented his past criminal record before the grand jury. In

Coppedge v. United States, *supra,* the court affirmed a denial of defendant's motion to dismiss an indictment that allegedly was procured on the basis of perjured testimony.

We thus conclude that if there was any infirmity in the grand jury proceedings, it was not of such a nature as to warrant the granting of a motion to dismiss. There was ample other evidence upon which the grand jury could have returned the indictment.

■ Finally, appellant Elbert Blango claims that his convictions were not supported by sufficient evidence. We do not agree.

We turn first to the charge of assault with a dangerous weapon. While it is conceded that Elbert Blango did not do the actual shooting of complainant Hart, there was a great deal of evidence that he participated in and actually encouraged the commission of the crimes of which they were convicted. D.C.Code 1973, § 22–105 provides that one who knowingly aids and abets the principal offender shall be charged as a principal and not as an accessory. *See* Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949). The essential elements of aiding and abetting are: (1) that an offense was committed by someone; (2) that the accused assisted or participated in its commission; and (3) that he did so with guilty knowledge. United States v. Lumpkin, 145 U.S.App.D.C. 162, 167, 448 F.2d 1085, 1090 (1971); United States v. Harris, 140 U.S.App.D.C. 270, 284 n.40, 435 F.2d 74, 88 n.40 (1970), cert. denied, 402 U. S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971). The hallmark of an aider and abettor is that the accused "in some sort associated himself with the venture . . . participated in it as in something that he wished to bring about [and] . . [sought] by his action to make it succeed." Creek v. United States, D.C.App., 324 A.2d 688, 689 (1974), quoting from United States

v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938); accord, Nye & Nissen v. United States, *supra,* 336 U.S. at 619, 69 S.Ct. 766.

Thus appellant Elbert Blango cannot claim that there was insufficient evidence upon which a reasonable mind might fairly conclude that he associated himself in the assault on Mr. Hart. He grabbed the pistol out of the hand of the complainant and, as he threw the pistol to his brother, yelled at him to kill Hart. This uncontroverted evidence is more than sufficient for a jury to find that Elbert Blango was guilty of assault with a dangerous weapon.

Likewise, appellant Elbert Blango's conviction for carrying a pistol without a license was supported by sufficient evidence. Appellant claims that his possession of the pistol was for too brief a time to constitute the offense and, additionally, asserts that he was entitled to possess the pistol in self-defense.

■ D.C.Code 1973, § 22–3204 makes it a crime to "carry . . . a pistol, without a license therefor . . . ." In order to assert the defenses of justified or momentary possession, an accused must show not only that the possession was either extremely brief or was excused and justified as stemming from an affirmative effort to aid and enhance social policy underlying law enforcement but also that there was an absence of criminal purpose. Hines v. United States, D.C.App., 326 A.2d 247 (1974). Here there was definitely a criminal purpose—to harm or to kill the complainant.

■ The claim that his possession of the pistol was merely in self-defense was rejected by the trier of fact, the jury, and thus is not subject to review on appeal. Wilson v. United States, 91 U.S.App.D.C. 135, 198 F.2d 299 (1952).

Finding no basis for reversal, the judgment below is

Affirmed.