Steven V. ALLEN, Appellant,

v.

UNITED STATES, Appellee.

Larry C. BING, Appellant,

v.

UNITED STATES, Appellee.

Nathaniel RODGERS, a/k/a Nathaniel Williams, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10837, 10876 and 11124.

District of Columbia Court of Appeals.

Argued Nov. 15, 1977.

Decided Feb. 24, 1978.

Robert E. McMillen, Washington, D. C., appointed by this court, for appellant in No. 10837.

Michael J. McCarthy, Washington, D. C., appointed by this court, for appellant in No. 10876.

Barney J. Keren, Arlington, Va., appointed by this court for appellant in No. 11124, joins in co-appellants' briefs.

Steven D. Gordon, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease, and Jason D. Kogan, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, KELLY, Associate Judge, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

These consolidated appeals challenge on due process and evidentiary grounds convictions of armed robbery,[1] assault with intent to kill while armed,[2] robbery,[3] possession of a dangerous weapon,[4] and carrying a pistol without a license.[5] Challenged also are the sentences imposed. We reject as without merit the challenges, and affirm the judgments of convictions.

Complaining that the pretrial identification procedures employed by the government were so impermissibly suggestive as to deprive them of their constitutional rights to a fair trial, appellants moved pretrial to suppress evidence of their respective identifications.[6] At the hearing on the motion there was testimony from which the court could have found the following as established fact.

On August 18, 1975, James H. Turner (the complainant) was alone in his home at 2429 Skyland Place, S.E. Sometime between 10:30 and 11:00 p. m., he responded to a ring of his front doorbell and, turning on the outdoor light, he observed through the peephole in the door, three men. One of the men, appellant Bing, complainant had seen on several prior occasions when he visited James Calloway, a roomer at complainant's home. Bing asked for Calloway and when informed that he was not at home, Bing requested and was given permission to use the bathroom. Bing later rejoined his two companions who had remained outside.

About 15 minutes later the doorbell rang again and complainant observed from an upstairs window Bing and one of the other two men, later identified as appellant Rodgers. When asked what they wanted, Bing requested but was denied permission to use the telephone. The complainant then, at Bing's request, consented to drive the two of them to a place some distance away. To this end complainant dressed and joined Bing and Rodgers on the outside. As they walked toward complainant's automobile which was parked in the driveway, he inquired about the third man and was told that he had gone home. They got into the automobile and Rodgers sat in the back, Bing in the front passenger's seat, and com-

1. D.C.Code 1973, §§ 22–2901, –3202.

2. D.C.Code 1973, §§ 22–501, –3202.

3. D.C.Code 1973, § 22–2901.

4. D.C.Code 1973, § 22–3214(b).

5. D.C.Code 1973, § 22–3204.

6. Super.Ct.Cr.R. 12(b)(3).

plaintant in the driver's seat. As he put the key in the ignition complainant felt an instrument, later identified as a pistol, pressed against the back of his head. At this point the third man, identified later as Allen, suddenly appeared at the driver's side of the automobile and pointed a pistol at complainant. Rodgers demanded complainant's money and when told that he had none, Bing removed the keys from the ignition and with one of them attempted without success to open the front door of complainant's house.

Bing returned to the automobile and demanded and was given complainant's house keys. Rodgers, apparently angered by complainant's failure to surrender the house keys initially, struck complainant repeatedly on the back of his head with the pistol, calling him a smart m_____ f_____.

During the interval, Bing was again unable to unlock the front door of the house. Returning to the car, complainant was ordered to get out, after which he was searched and marched to the front door, Rodgers at the rear pointing his gun and Allen at his side also pointing a gun. Bing then handed complainant the bunch of keys and ordered him to open the door. After unlocking several locks, complainant ran inside in an effort to escape. As he was about to slam the door he heard the sound of a gunshot and realized a few seconds later that he had been shot in the neck and was bleeding profusely. The three men ran away, taking with them all of complainant's keys, his wedding ring, and approximately $3.00 which they had taken from him at the car.

Hearing the sound of the gunshot, several of complainant's neighbors investigated, observed his condition and called the police and an ambulance. Complainant was able to tell the police what had happened, but was unable to tell which of the three men shot him. He was able to give them only a very general description of the assailants. He did tell them, however, that he had seen one of the men on several prior occasions, when the man came to complainant's home to visit a roomer. The neighbors described to the police a 1965 or 1966 two-toned Ford they had seen speeding from the scene immediately after the shooting. None of the neighbors was able to describe any of the three men.

Two days later police stopped, in the general vicinity of the assault and robbery, a car which matched the description given by complainant's neighbors of the getaway car. Allen was the driver of the car and Rodgers was a passenger.

On August 22, 1975, the day after complainant was released from the hospital, he went to police headquarters, and Detective Ball of the robbery squad showed him an array of photographs. Complainant selected a photograph of Bing and identified him as the man who had visited his home on several occasions and who had participated in the assault and robbery. Detective Ball then took complainant to the basement and showed him other photographs, from which he made a positive identification of Allen as the man who pointed a pistol at him during the robbery and assault.

Detective Ball went to complainant's home on August 27, 1975, with another array of photographs. Complainant selected a photograph of Rodgers and tentatively identified him as the man who struck him repeatedly with a gun and who later pointed the gun at him as they walked from the car to the house.

On September 2, 1975, complainant attended a lineup at police headquarters. Bing and Allen were both in the lineup, but complainant identified only Bing and an uninvolved man.[7] He did not identify Allen at that time. On September 16, complainant attended another lineup and made a positive identification of Allen as an armed participant in the robbery and assault.

Complainant attended a third lineup on September 24, 1975, and made a positive

---

7. After the first lineup the government obtained, on September 4, an order for a second

lineup and an order that Allen not cut his hair or shave.

identification of Rodgers as the other armed participant in the robbery and assault.[8]

Complainant's explanation as to why he was unable to identify Allen at the first lineup was that Allen, sometime after the assault and robbery, cut his hair and shaved his beard. Complainant denied, however, that anyone had influenced his identification of Allen at either the photographic confrontation or the second lineup. At the close of his testimony complainant made in-court identification of Bing, Allen, and Rodgers as participants in the criminal enterprise.

Then followed testimony by Detective Ball concerning the investigative and identification procedures which resulted in the arrest and indictment of each of the three men. At the conclusion of the suppression hearing the court found that there was no impermissible suggestivity in any of the identification procedures and that, in any event, there was a source independent of the photographic confrontations and the lineups for in-court identification of each of the three men. The court, therefore, denied the motion to suppress.

The case then proceeded to trial at which there was testimony concerning the investigative and identification procedures employed by the police, substantially as at the suppression hearing. The complainant related again the details of the assault and robbery, stating that his key case containing his car keys, a wedding band, and three dollars were taken from him. He was unable to state with certainty which of the three men shot him; he did state that as a result of the wound in his neck he was hospitalized for several days. In addition to his testimony as to the photographic and lineup identifications, complainant made in-court identifications of each appellant, describing his participation in the assault and robbery.

Although complainant denied at the suppression hearing that he had any conversation with Detective Ball following the first lineup concerning his failure to identify Allen, he testified to the contrary at trial. On cross-examination, he stated that after the first lineup Detective Ball told him that the reason he was unable to make an identification was that Allen had cut his hair and shaved his beard. Complainant, however, again denied that anyone influenced his identification of Allen at the second lineup.

Detective Ball denied having any such conversation following the first lineup. He explained that when he first saw Allen during his investigation of the assault and robbery, he had a "shabby" beard and joining sideburns. Observing at the first lineup that Allen was clean shaven, Detective Ball arranged a second lineup and obtained an order that Allen not cut his hair or shave. Trial counsel for Allen, who is also appellate counsel, did not request at trial reconsideration of the order denying the motion to suppress identification evidence.

Allen did not put on a defense. Bing and Rodgers interposed separate alibi defenses. The cases were then submitted to the jury. Allen was found guilty of armed robbery, assault with intent to kill while armed, and possession of a prohibited weapon. Rodgers was found guilty of armed robbery, assault with intent to kill while armed, and carrying a pistol without a license. Bing was found guilty of robbery and assault with intent to kill. These appeals followed the imposition of sentences.

■ Claiming reversible error in the denial of the motions to suppress identification testimony, appellants contend that the pretrial identification procedures were so impermissibly suggestive as to frustrate a fair trial, thus denying them due process of law. Due process considerations may require the exclusion of evidence of pretrial identification when it is the product of procedures so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). However, the "per se" exclusionary rule of *Gilbert v. California, supra,* was modified by the holding in *Manson v.*

8. Rodgers was not in either of the first two lineups.

*Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In that case the Court declared that the reliability of identification testimony is the controlling consideration. *See also Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1963).

■ At the suppression hearing in the cases at bar, the trial court considered all the testimony pertaining to the photographic and lineup confrontations, and the resulting identifications, and found that the procedures employed were not impermissively suggestive. We are satisfied that the trial court was correct in resolving this issue adversely to appellant. *See Neil v. Biggers, supra.*

It is true that there was conflicting testimony at trial concerning a conversation between Detective Ball and the complainant. Complainant's testimony was that after the first lineup he was told that Allen had altered his facial appearance before the lineup. Detective Ball testified that the conversation took place sometime after the second lineup. Because Allen did not renew his motion to suppress identification after the complainant's trial testimony, the trial court did not have occasion to make a finding of fact as to when the conversation did occur.

■ Assuming arguendo that the conversation followed the first lineup, however inappropriate it may have been, without more, it would not in our view have required a holding that the second lineup held two weeks later was so impermissibly suggestive as to give rise to a "very substantial likelihood" of irreparable misidentification. *Manson v. Brathwaite, supra; Neil v. Biggers, supra.* Certainly the conversation would not under the totality of the circumstances have so impaired the reliability of complainant's identification at the photographic confrontation as to require its exclusion. *Manson v. Brathwaite, supra; Simmons v. United States, supra; Neil v. Biggers, supra. See also Marshall v. United States,* D.C.App., 340 A.2d 805, 807–808 (1975). In any event, Allen's counsel having conceded that he did not move for re-

consideration of the suppression motion at trial, the point must be considered as waived, and we decline to remand Allen's case for a new hearing on the motion to suppress identification.

■ We brush aside as frivolous Bing's contention that because the complainant had seen him on prior occasions the photographic and lineup identifications were, as to him, impermissibly suggestive. Also without merit is Rodgers' challenge to the identification testimony. He adopted the briefs of Allen and Bing, but obviously Detective Ball's statements to complainant had no reference to Rodgers. Moreover, there is no evidence whatsoever that the complainant had ever seen Rodgers prior to his appearance and participation in the assault and robbery. Consequently, absent any showing of impermissible suggestivity, complainant's identification of Rodgers is unassailable. *Anderson v. United States,* D.C.App., 364 A.2d 143 (1976); *Marshall v. United States, supra.*

■ Appellant Allen urges that his conviction of assault with intent to kill while armed should not be permitted to stand since he was charged as an aider and abetter and there was no evidence that he had a specific intent to kill. Allen apparently concedes that the evidence was sufficient to establish that one of his companions had the requisite intent to kill, but he misconceives the role of an aider and abetter. D.C.Code 1973, § 22–105, requires proof that the offense charged was committed by someone other than the person charged with aiding and abetting, that the accused assisted or participated in its commission, and that he did so with guilty knowledge. *See Byrd v. United States,* D.C.App., 364 A.2d 1215 (1976); *Blango v. United States,* D.C.App., 335 A.2d 230 (1975). There is, of course, no requirement that the aider and abetter have the identical intent of the principal at the time and place. *See Shanahan v. United States,* D.C.App., 354 A.2d 524 (1976). Moreover,

[i]t is well settled . . . that he need not necessarily have intended the particular crime committed by the principal; an accessory is liable for any criminal act which in the ordinary course of things

was the natural or probable consequence of the crime that he advised or commanded, although such consequence may not have been intended by him. [*United States v. Clayborne,* 166 U.S.App.D.C. 140, 148, 509 F.2d 473, 481 (1974), citing 22 C.J.S. Criminal Law § 92 (1961).] *See also United States v. Harris,* 140 U.S. App.D.C. 270, 284 n.40, 435 F.2d 74, 88 n.40 (1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971).

■ Here, the evidence was that Allen and Rodgers held guns on complainant as he was marched from the car to the front porch. As complainant unlocked the last lock of the front door and attempted to dash inside, one of the men shot him. We can think of no more natural and probable consequence of the acts of pointing guns at complainant during the robbery than that he would be shot if he tried to run away. *See United States v. Jones,* 170 U.S.App. D.C. 362, 517 F.2d 176 (1975). We have no difficulty therefore in concluding that the jury could have found from the evidence, as it did, that appellant Allen was guilty of armed assault with intent to kill.

■ Appellant Allen argues in the alternative that even if the evidence is sufficient to sustain his conviction of assault with intent to kill while armed, the rule of lenity and D.C.Code 1973, § 23–112,[9] require in this case concurrent sentences for armed robbery and assault with intent to kill while armed, since the intent to kill is "implied" rather than an "actual" intent. But for our disposition of this claim we perceive no legal distinction between "implied" and "actual" intent. In arriving at its verdict on the charge of assault with intent to kill

while armed, the jury was required to find an element not involved in armed robbery. The rule of lenity, therefore, is simply not applicable in this case. D.C.Code 1973, § 23–112 permits the sentencing court to impose consecutive terms of imprisonment for crimes with different elements. Here, the armed robbery and assault with intent to kill were separate and distinct offenses requiring proof of different elements. Because the sentences were within statutory limits and consistent with D.C.Code 1973, § 23–112, we hold that the trial court did not abuse its discretion in the exercise of its sentencing function. *See United States v. Butler,* 149 U.S.App.D.C. 300, 304, 462 F.2d 1195, 1199 (1972); *King v. United States,* D.C.App., 271 A.2d 556, 558 n.7 (1970, *as modified* 1971).

■ Finally, appellant Bing contends that the trial court abused its discretion in sentencing him to more severe terms of imprisonment than one of his co-appellants,[10] since he was convicted of crimes "less serious" than those of Allen and Rodgers. We find no error. His sentences, like those imposed on Allen and Rodgers, were within the statutory maximum and are therefore not reviewable by this court. *See Walden v. United States,* D.C.App., 366 A.2d 1075, 1076 (1976); *Fludd v. United States,* D.C.App., 336 A.2d 539, 541 (1975); *Foster v. United States,* D.C.App., 290 A.2d 176, 179 (1972).

*Affirmed.*

---

**9.** D.C.Code 1973, § 23–112, provides:

A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) arises out of the same transaction and requires proof of a fact which the other does not. . . .

**10.** Bing was sentenced to consecutive terms of imprisonment, five to fifteen years for assault with intent to kill, and three to 15 years for

robbery. Allen was sentenced to consecutive terms of from five to 20 years imprisonment each for armed robbery and assault with intent to kill while armed, two years of each suspended, and one year's incarceration for possession of a prohibited weapon, to be served concurrent to the other, and placed on three years probation after the period of incarceration. Rodgers was sentenced to consecutive terms of incarceration of from six to eight years for assault with intent to kill while armed, five to fifteen years for armed robbery, and one year for carrying a pistol without a license.