**Mary Jane BEDNEY, a/k/a Lillie Mae Bedney, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 82–1585.

District of Columbia Court of Appeals.

Argued Nov. 29, 1983.

Decided Feb. 6, 1984.

Richard A. Graham, Washington, D.C., appointed by this court, for appellant.

Daniel M. Cisin, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell and Mary Ellen Abrecht, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER and MACK, Associate Judges, and REILLY, Chief Judge, Retired.

PER CURIAM:

Appellant was convicted by a jury of armed assault with intent to kill, D.C.Code § 22–502, –3202 (1981), and carrying a pistol without a license, *id.* § 22–3204. In challenging the convictions, she contends, *inter alia,* that the trial court's instructions to the jury were inadequate and that the evidence was insufficient to support the conviction of assault with intent to kill.[1] We affirm.

According to the evidence presented by the government, the armed assault for which appellant was convicted was the culminating event in a quarrel between appellant and another woman, Lenora Cole, which had occurred a few hours earlier at the same place, the corner of 11th and O

---

**1.** Also assigned as error were certain rulings on the admissibility of testimony in which the application of the hearsay rule was raised. We have examined these rulings. We regard one of them as questionable, but not of such significance that it could have swayed the judgment of the jurors. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). It was therefore harmless.

Streets, N.W. On the first occasion, after a heated verbal exchange between the two women—Cole was accompanied by her sister who joined in the argument—the pair resorted to punching and scratching each other. This sidewalk fracas, observed by many onlookers, went on for about 30 minutes, with Cole emerging as the apparent victor and appellant quitting the scene to go to the apartment of a friend who lived nearby.

Several hours later, Cole, equipped with a long piece of piping and reinforced by her sister and her mother, Mrs. Betty Stevenson, returned to the combat zone. Soon thereafter, appellant arrived at the same intersection with two relatives in her wake, a young nephew, Ken Simmons, and her sister. Cole testified that appellant, who was carrying a brown paper bag, came up to her and said "I'm going to get you," but Mrs. Stevenson prevented another fist fight by stepping between them. Appellant then walked to the doorway of a nearby building—approximately fifteen feet from where Cole was standing. She removed a revolver from the bag that she was carrying. People standing in the vicinity then heard a noise that sounded like a gunshot. Stevenson testified that she then saw her daughter bend over and that blood was coming from the back of her neck when she lifted her head.

Two police officers, Donald Wikert and James Szewczyk, arrived at the intersection of 11th and O Streets shortly after hearing what seemed to be a gunshot. Officer Wikert approached appellant and picked up a brown paper bag containing a .22 caliber revolver that had dropped to the ground. He placed her under arrest. Officer Szewczyk approached Cole and observed blood coming from an injury behind her right ear.

A crime scene search officer testified that the revolver contained one empty shell casing and four live rounds, and that the absence of dust or debris in the barrel indicated that it had been recently fired. In his inspection of the crime scene, the officer observed a small amount of blood on the sidewalk near where Cole had been standing.

Appellant testified that after the first fight, she washed up at a friend's apartment across the street and emerged later with her two relatives.

She said her sister was carrying a paper bag containing a revolver, which they intended to deliver to their mother who needed it for protection. As they encountered the Cole group, appellant informed them that she was going to report Cole's sister to the Citizens Complaint Bureau in order to recover some money the latter owed to her. As appellant was walking on, Cole approached her from behind with the metal pipe in hand. Appellant's sister then handed her the bag containing the gun. Cole then struck appellant with her pipe.

Appellant ran to the vestibule of a nearby church and removed the revolver from the paper bag upon seeing Cole pull a silver handgun from her pocketbook. Cole's sister began to struggle with Cole over the gun, which appellant said, went off while pointed at the sidewalk. Appellant estimated that she was standing fourteen feet away from Cole when this occurred. Appellant said she could not remember whether she fired the gun in her own possession. When the police arrived, appellant directed them to the gun, then in the bag which she had dropped upon the sidewalk. The police did not recover a gun from Cole, and appellant asserted that Cole passed it off to a bystander.

Appellant's nephew, Simmons, called by the defense, testified that he observed Cole's mother pass a handgun to her daughter. He then saw appellant and Cole aim guns at each other. He heard two gunshots, and shortly thereafter, the police arrived and arrested appellant.

## I

Appellant contends that the court's instructions to the jury on the relationship between self-defense and provocation were

inadequate. Specifically, with regard to the charge of assault with intent to kill, appellant argues that the court erred in failing to instruct the jury that provocation by the victim could have negated the specific intent to kill. The error occurred, asserts appellant, when the judge repeated the standard instruction on provocation and self-defense in response to a note from the jury requesting restatement of the relationship between provocation and intent to kill. That instruction informed the jury that if it found that appellant provoked an attack, then appellant could not benefit from a claim of self-defense.[2] Defense counsel did not object to the instruction, and in fact, expressly agreed to it.

■■■ Decisions concerning reinstruction of a jury are within the discretion of the trial court. *Murray v. District of Columbia,* 358 A.2d 651, 653 (D.C.1976); *Atkinson v. United States,* 322 A.2d 587, 588 (D.C.1974). In the instant case, both the court and counsel interpreted the jury's note as a request to repeat the self-defense instruction and the directions contained therein as to provocation. Given the ambiguous nature of the jury's request, the court's interpretation and reinstruction were reasonable. We recognize the court's duty to remedy a jury's confusion over instructions, *Bollenbach v. United States,* 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946); *United States v. Bolden,* 169 U.S.App.D.C. 60, 67, 514 F.2d 1301, 1308 (1975), but hold that the reinstruction in question was a proper response in clarification. Our review discloses no abuse of discretion and certainly no plain error.

## II

■ Appellant also contends that the evidence is insufficient to support the conviction of assault with intent to kill, stressing in particular that testimony was lacking to prove that the blood on complainant's neck, which one police officer noticed, resulted from a wound inflicted by gunshot. It is true that because her injury was variously described by witnesses as a "scratch" or an "abrasion" and as no hospital or other medical records were presented, the hypothesis that complainant'. skin was grazed by a bullet fired in her direction might be dismissed as speculative. But to prove the offense for which appellant was convicted, a lethal intent can be demonstrated without showing that the assailant succeeded in wounding his intended victim. *Fletcher v. United States,* 335 A.2d 248, 250–51 n. 5 (D.C.1975); *Wooten v. United States,* 343 A.2d 281, 282 (D.C.1975).

While there were serious conflicts of testimony with respect to the shooting incident, there was substantial evidence (other than that relating to the neck injury) from which a jury after resolving the credibility issues could conclude that appellant fired at the complainant with the deliberate purpose of causing death.[3]

■ The record clearly establishes that there was deep animosity between appellant and Cole. In fact, several hours after a lengthy physical altercation between them, appellant approached her antagonist and was heard to say that she was going to "get" her. Shortly thereafter, according to

---

2. The trial judge read instruction 5.17 of the Criminal Jury Instructions for the District of Columbia. The relevant portion, 5.17(D) provides:

   If you find that the defendant was the aggressor, or if he provoked the assault upon himself, he cannot invoke the right of self-defense to justify his use of force. However, if one who provokes a conflict later withdraws from it in good faith, and communicates that withdrawal by words or actions, and he is thereafter pursued, he is justified in using deadly force to save himself from imminent danger of death or serious bodily harm.

3. After the government rested, the defense unsuccessfully moved for acquittal and then introduced testimony. Hence this motion was waived, and the ruling is not before us. *Franey v. United States,* 382 A.2d 1019, 1021 (D.C. 1978). Thus, in passing upon the asserted error in the denial of appellant's motion for a judgment of acquittal made at the close of all the evidence, the testimony offered by the defense and by the government in rebuttal must be taken into account. *Id.* at 1022.

appellant's own witness, Simmons, appellant aimed a revolver at Cole. Bystanders then heard a gunshot.[4] Finally, Officer Irwin testified that the gun admittedly in appellant's possession appeared to have been recently fired.

Viewing all of the evidence in a light most favorable to the government, we deem it sufficient for a jury to determine beyond a reasonable doubt that appellant shot at Cole intending to kill.

Accordingly, the judgment is

*Affirmed.*

---

**4.** The police testimony was that only a single shot was fired and that an inspection of the pavement or sidewalk upon which the Cole gun (if any) was allegedly discharged revealed nothing to indicate the impact of a bullet.