**Bradley MURCHISON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 83–1386.

District of Columbia Court of Appeals.

Argued Nov. 20, 1984.

Decided Dec. 27, 1984.

H. Heather Shaner, Washington, D.C., for appellant.

Deborah L. Long, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and NEBEKER and NEWMAN, Associate Judges.

PRYOR, Chief Judge:

Following a jury trial, appellant was convicted of assault with a dangerous weapon, D.C.Code § 22–502 (1981), and of carrying a pistol without a license, *id.* § 22–3204. On appeal, appellant contends that (1) there was insufficient evidence to support his convictions; (2) the trial court committed reversible error in failing adequately to instruct the jury which of two incidents was the basis for the assault with intent to kill charge;[1] and (3) the trial court committed reversible error in failing to reinstruct the jury in response to a jury note. Finding none of appellant's arguments persuasive, we affirm.

I

In the early morning hours of January 6, 1982, Rodney Timberlake was shot outside Terrell's Nightclub in Southeast, Washington, D.C.

At trial, the government's evidence showed that Timberlake, accompanied by his brother, Kevin Valentine, and two friends, arrived at Terrell's at approximately 1:30 a.m. Timberlake entered the club alone. The club was crowded and as he moved through the room, he accidentally bumped into another club patron, later identified as Troy V. Ellis. Timberlake and Ellis exchanged words. Ellis left the club but returned moments later with several "rings" on his fingers, punching his hands together and indicating that he was prepared to fight. Ellis approached Timberlake, punched him in the face, and a fight between the two men ensued. The fight quickly escalated into a brawl involving a number of people in the club. Timberlake testified that he was "winning" the fight when someone pulled him off of Ellis. After the two men stopped fighting, Timberlake saw appellant hand Ellis a gun. Ellis pointed the gun directly at Timberlake and pulled the trigger four times but the gun failed to discharge. After the fourth attempt, Timberlake picked up a trash can to throw at Ellis prompting Ellis to leave the bar through the front door. About the same time, the owner of the bar, Charles

---

1. Appellant was charged with two counts of assault with intent to kill. The jury found him guilty of one count of the lesser included offense of assault with a dangerous weapon. The second count was dismissed by the trial court. *See infra* note 2.

Campbell, and the bartender, Joseph Lewis, ejected the rest of the individuals who had been fighting in the club.

Timberlake spent approximately five minutes looking for an exit other than the front door by which to leave the club. Finding no alternate way out, he left the club by the front door and saw Ellis standing outside. Timberlake testified that Ellis then fired three shots, two of which struck Timberlake.[2]

Approximately nine months after the shooting, appellant was arrested. At that time, appellant gave a statement to Detective Calvin Brooks of the Metropolitan Police Department in which he admitted passing the gun to Ellis while they were inside the club. Appellant stated that after the gun failed to fire, everyone left the club. About five minutes later Timberlake emerged from the front door of the club. Appellant stated that he ran off when he saw Ellis point the gun at Timberlake. Appellant's statement was introduced at trial.

Appellant and Ellis were tried together. The government presented evidence about both the unsuccessful shooting incident inside the club and the subsequent shooting outside the club.[3] During the discussion about jury instructions, and over the government's objection, the trial court ruled that only the incident outside the club could form the basis for an assault with intent to kill charge and, accordingly, that the jury, in order to convict, had to be unanimous in finding guilt on that basis alone. At the conclusion of the court's instructions to the jury, appellant was given an opportunity to raise any objections to the instructions. He did not do so.

The jury began its deliberations on the afternoon of September 22, 1983. The following afternoon the court received a note from the jury which read:

Your Honor,

We have some confusion about part of your instructions concerning those specific offenses. You seemed to make a distinction about what assault specification applies to what took place in the bar and what took place on the street.

Would you please repeat those instructions.

The trial court felt the note was ambiguous and, after discussion with counsel, sent a note back to the jury requesting that it be more specific in its inquiry.

The jury did not return another note clarifying the earlier inquiry. Instead, it deliberated for approximately one more hour and returned a guilty verdict with respect to appellant on both the assault charge and the carrying a pistol without a license charge. The jury was unable to reach a unanimous verdict concerning Ellis and, accordingly, the trial court declared a mistrial with respect to Ellis.

## II

Appellant challenges his conviction for assault with a dangerous weapon. He claims that there was insufficient evidence from which a reasonable jury could conclude that he aided and abetted in the assault on Timberlake outside of Terrell's.[4]

---

**2.** One shot hit Ralph Holton, another patron of Terrell's who had left the club when the fighting broke out. Appellant and codefendant Ellis were charged with one count of assault with intent to kill Ralph Holton. At the close of the government's case, the trial court granted both defendants' motions for judgment of acquittal as to the Holton assault.

**3.** Appellant did not present any evidence at trial.

**4.** Appellant also claims there was insufficient evidence to support his conviction for carrying a pistol without a license. Appellant argues that

no evidence was presented at trial showing that the gun he was seen passing to Ellis inside the club was ever operable. While it is clear from the record that the gun used in the shooting outside the club was operable, appellant argues there was no evidence presented that the gun effectively used outside was the same weapon previously used inside.

Viewing the evidence in the light most favorable to the government, *see, e.g., Hall v. United States,* 454 A.2d 314 (D.C.1982), we conclude that a reasonable jury drawing reasonable inferences could have found that the weapon appellant handed Ellis inside the club was the same

Appellant argues that the incident inside the club terminated when Ellis retreated after unsuccessfully firing the gun that appellant had given him. Accordingly, appellant asserts that the incident inside the club and the shooting incident outside the club were not part of a continuum, and that the intervening time period between the two incidents obviates any liability on his part for the outside event. We disagree.

■ D.C.Code § 22–105 (1981), provides that one who aids and abets the principal in committing a criminal offense shall be charged as a principal. *See In re C.D.*, 437 A.2d 171, 175 (D.C.1981). A person aids and abets if "he knowingly associates himself in some way with the criminal venture with the intent to commit the crime." Criminal Jury Instructions for the District of Columbia, No. 4.02 (3d ed. 1978).

■ Thus, the essential elements of aiding and abetting are: (1) that an offense was committed by someone; (2) that the accused participated in the commission; and (3) that he did so with guilty knowledge. *Byrd v. United States*, 364 A.2d 1215, 1219 (D.C.1976); *Blango v. United States*, 335 A.2d 230, 235 (D.C.1975). A person need not be personally present during the commission of the offense to be found guilty of aiding and abetting. *See United States v. Garrett*, 232 U.S.App.D.C. 58, 63, 720 F.2d 705, 712 (1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1311, 79 L.Ed.2d 708 (1984); *United States v. Sampol*, 204 U.S.App.D.C. 349, 404–05, 636 F.2d 621, 676 (1980); *Weisberg v. United States*, 49 App.D.C. 28, 258 F. 284 (1919). Moreover, there is no prerequisite that the principal perpetrator of the offense also be convicted. *Strickland v. United States*, 332 A.2d 746, 749 (D.C.1975), *cert. denied*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1976); *Gray v. United States*, 104 U.S. App.D.C. 153, 260 F.2d 483 (1958).

■■ In reviewing a claim of insufficient evidence, we must view the evidence in the light most favorable to the government, bearing in mind the jury's right to determine credibility of witnesses and draw reasonable inferences from their testimony. *Hall v. United States, supra* note 4, 454 A.2d at 317; *Frendak v. United States*, 408 A.2d 364, 370 (D.C.1979); *Franey v. United States*, 382 A.2d 1019, 1022 (D.C. 1978). The court may reverse on grounds of insufficiency only "if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *Hack v. United States*, 445 A.2d 634, 639 (D.C.1982) (quoting *Curley v. United States*, 81 U.S.App.D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947); *McEachin v. United States*, 432 A.2d 1212, 1218 (D.C.1981).

■ Evaluating the evidence in the light most favorable to the government, we conclude that there was sufficient evidence from which a jury could reasonably find that appellant aided and abetted the shooting of Timberlake outside of Terrell's.

The record contains ample evidence that the inside and outside incidents were part of a continuous chain of events. There was unrebutted testimony from numerous witnesses that both the inside and the outside events took place within a time period of five to ten minutes, and within a distance of approximately twenty-five to thirty-five feet of each other.

The victim testified that he searched the club for alternate exits for five to ten minutes, and finding none, was forced to leave by the front door only to find Ellis waiting outside. Appellant substantiated this in his statement to Detective Brooks where he asserted that Timberlake took approximately five minutes to emerge from the club after the fighting individuals had been ejected from the bar. Mr. Lewis, the club bartender, and Mr. Campbell the club own-

weapon used to shoot Timberlake outside the club. Accordingly, we affirm appellant's con-

viction for carrying a pistol without a license.

er, both testified that they heard gun shots fired outside the door within five minutes after the fight had been broken up and the participants had been ejected.

Similarly, the jury could have reasonably inferred from the actions of both Timberlake and Ellis that the fight was not finished when Ellis retreated out the front door. One could easily conclude that Timberlake hurriedly searched for an alternate exit out of the club because he was afraid that Ellis was waiting for him outside the front door, still prepared to fight. Ellis' presence immediately outside the club's front door indicates that Timberlake had a basis for his apprehension.

■ A reasonable jury could have concluded that, appellant's actions in handing Ellis the gun inside the club facilitated and encouraged the subsequent chain of events, culminating in the shooting of Timberlake outside the club. *See, e.g., Glass v. United States,* 395 A.2d 796, 806 (D.C.1978); *Creek v. United States,* 324 A.2d 688, 689 (D.C. 1974). Moreover, the shooting outside the club was a natural and probable consequence of appellant's actions in handing Ellis the gun inside the club.[5] *See Hackney v. United States,* 389 A.2d 1336, 1342 (D.C.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 95 (1979); *Allen v. United States,* 383 A.2d 363, 367–68 (D.C. 1978).

Accordingly, we conclude that appellant's argument in this regard is unpersuasive.

### III

■ Appellant also contends that he was prejudiced because the trial court inadequately instructed the jury on which incident—the inside one or the outside one—constituted the basis for the assault with intent to kill charge. Although appellant was given an opportunity to raise any objections to the instructions at the time of instruction, he failed to do so. Appellant, therefore, may only prevail on this claim by demonstrating plain error. *See* D.C.Code § 11–721(e) (1981); *Towles v. United States,* 428 A.2d 836 (1981). Under the plain error standard we must find that there was prejudice to appellant's substantial rights so severe as to amount to a "miscarriage of justice." *Adams v. United States,* 302 A.2d 232, 234 (D.C.1973); *see Watts v. United States,* 362 A.2d 706 (D.C. 1976) (en banc). In reviewing jury instructions, we must look at the instructions "as a whole in assessing whether they constituted prejudicial error." *United States v. Lemire,* 232 U.S.App.D.C. 100, 113, 720 F.2d 1327, 1340 (1983), *cert. denied,* — U.S. —, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984).

The trial court instructed the jury, in relevant part:

The assault with intent to kill in this case is the incident of the shooting outside the bar. That is what the law provides.

In addition, the court told the jury:

Your verdict must be unanimous. Our system provides that unanimous verdicts are called for.

Appellant argues that the instructions were inadequate since they did not make clear to the jury that in order to find appellant guilty of assault it had to unanimously conclude that appellant was guilty as an aider and abettor to the outside assault as opposed to the inside assault. Upon review, we do not find that these instructions constitute plain error.

In *Hawkins v. United States,* 434 A.2d 446, 449 (D.C.1981), the case on which appellant principally relies, we held that "where one charge encompasses two separate incidents, the judge must instruct the jury that if a guilty verdict is returned the jurors must be unanimous as to which incident or incidents they find the defendant guilty." (Citing *Johnson v. United States,* 398 A.2d 354, 368 (D.C.1979)). Appellant

---

5. We note that in the District of Columbia, the common law accessory before the fact is treated as an aider and abettor. D.C.Code § 22–105 (1981). Viewed in this way, it is clear that such a person is deemed responsible for the reasonable, and probable results of his acts.

misconstrues the applicability of *Hawkins* to this case.

■ In *Hawkins,* the trial court had instructed the jury that it did not have to unanimously agree on which of a number of incidents constituted the assault charge. *Id.* at 449. In contrast, the court in this case instructed the jury that it could only consider *one* incident—the shooting outside the club—as the basis for any verdict on the assault charge. Pursuant to the court's instruction, the jury was not even allowed to consider two incidents; rather, it was clear which incident it had to agree on in order to reach a unanimous verdict.[6] This court "must presume, unless the contrary appears, that the jury understood and followed the court's directions." *Christian v. United States,* 394 A.2d 1, 23 (D.C. 1977), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979).

■ In sum, the record before us reflects that the trial court instructed the jury that, to convict on assault, it had to reach a unanimous verdict on the outside shooting only. *See Hack v. United States, supra,* 445 A.2d at 641. This instruction satisfied the Sixth Amendment requirement for unanimous verdicts, pursuant to which the jury must be in "substantial agreement as to just what defendant did as a step preliminary to determining whether that defendant is guilty of the crime charged." *Id.* at 641 (quoting *United States v. Gipson,* 553 F.2d 453, 457–58 (5th Cir.1977)). Accordingly, we find no plain error in the trial court's instructions to the jury.

## IV

■ Finally, appellant contends that the trial court erred in failing to reinstruct the jury in response to one of the jury's notes. Decisions whether and how to reinstruct the jury are within the sound discretion of the trial court. *Bedney v. United States,*

471 A.2d 1022, 1024 (D.C.1984); *Murray v. District of Columbia,* 358 A.2d 651, 653 (D.C.1976); *Atkinson v. United States,* 322 A.2d 587, 588 (D.C.1974); *United States v. Bolden,* 169 U.S.App.D.C. 60, 67, 514 F.2d 1301, 1308 (1975). Our review of the trial court's actions with respect to the note discloses no abuse of discretion.

■ While the trial court is under an obligation to respond to a jury's confusion, *Bedney v. United States, supra,* 471 A.2d at 1024 (citing *United States v. Bolden, supra,* 169 U.S.App.D.C. at 67, 514 F.2d at 1308), particularly where the jury "makes explicit its difficulties," *United States v. Bolden, supra,* 169 U.S.App.D.C. at 67, 514 F.2d at 1308, the court is not required to respond to every inquiry from the jury. *Cf. Bedney v. United States, supra,* 471 A.2d at 1024.

■ In this case the jury's note was ambiguous. The trial court did not simply ignore the note but rather, and prudently, requested the jury to be more explicit in its inquiry. Significantly, the court had shown a willingness earlier to respond to jury notes. The court had received a previous note from the jury, at 2:10 p.m. on September 22, requesting that appellant's statement to the police be read back to them. The court complied with that request after which the jury resumed its deliberations.

There is no reason to believe the jury was in any way intimidated by the court. The jury's verdict was apparently carefully considered. It convicted appellant of only a lesser included offense on the assault with intent to kill charge. Moreover, it was unable to reach a unanimous verdict with respect to the codefendant, Ellis. We conclude that the defendant was not prejudiced by the trial court's response to the jury note in question.

*Affirmed.*

---

6. In our view, the court need not have excluded, as a basis for criminal responsibility, the inside incident so long as the jury was properly instructed under *Hawkins, supra.* In fact, by limiting the government to a part of its case, the court's instruction actually benefited appellant, rather than prejudiced him.

NEWMAN, Associate Judge, dissenting:

I cannot agree with the majority that the evidence is sufficient to sustain the conviction. Thus, I dissent and need not reach appellant's other contentions.