**Robert GARRETT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 08–CF–703.**

District of Columbia Court of Appeals.

Argued Nov. 17, 2010.

Decided May 26, 2011.

---

Stefanie Schneider, Public Defender Service, with whom Greta Gao, James Klein, and Shilpa S. Satoskar, Public Defender Service, were on the brief, for appellant.

Anne Y. Park, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, John P. Mannarino, and Eric P. Gallun, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and OBERLY, Associate Judges, and KRAMER, Associate Judge, Retired.*

PER CURIAM:

Robert Garrett appeals his convictions for assault with a dangerous weapon (ADW), possession of a firearm during a crime of violence (PFCV), carrying a pistol without a license (CPWL), unlawful possession of a firearm (UF), unlawful possession of ammunition (UA) and unlawful possession of a pistol by a convicted felon (UP). He argues that the trial court erred in permitting the jury, in response to a question it posed during deliberations, to consider as evidence an utterance by a witness while on the stand that had not been in response to a question. Because the court conducted no inquiry of the jury to attempt to determine what remark of a witness it had in mind, and because this left open the real likelihood that the jury gave weight to a witness's utterance not tested by the adversarial process, we hold that the trial court abused its discretion and we must reverse.

## I. Factual Background

This appeal arises from events that occurred during jury deliberations. During the second day of deliberations, the jury sent a note to the court asking, "[If] something is muttered [by a] witness while on the stand that was not in response to a question, can we consider that utterance?" The trial court expressed its concern that asking the jury what statement they were referring to would violate the jury's deliberative process and offered to answer the note with a simple "yes." The defense objected, concerned that the statement could have been something that neither the parties nor the court had heard and to which, therefore, the defense had not had an opportunity to object. The court rejected this interpretation of the circumstances giving rise to the note, stating, "It may be they heard and you don't [sic] pay attention to something which the jury hears and they consider it. That's within their province." The court decided to answer the jury simply by writing "yes" in response, based on its opinion that "if they heard something and it came from a witness, . . . then they certainly can consider it if they choose to." It answered the jury's question accordingly.

The next day the defense filed a motion for reconsideration asking the trial court to inquire as to the nature of the utterance referenced in the note. The trial court denied the motion, stating, "I still think that asking anything in more detail would violate the deliberative functions of the jury, and I can't assume that it's anything that[ ] . . . would be impermissible or otherwise inadmissible, and that would be

---

* Judge Kramer was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on May 1, 2011.

speculating on my part." The parties agree in this appeal that the nature and substance of the witness's remark is unknowable on this record.

## II. Legal Analysis

### A. Did the Trial Court Abuse its Discretion?

■ The primary issue is whether the trial court abused its discretion by failing to inquire further into the jury's note to establish whether or not the utterance referenced in the note was actually extrinsic evidence. *See Evans v. United States,* 883 A.2d 146, 151 n. 4 (D.C.2005); *Davis v. United States,* 510 A.2d 1051, 1052 (D.C. 1986).

■ "The right to a trial by an impartial jury is 'fundamental and deeply embedded in American jurisprudence.'" *Medrano–Quiroz v. United States,* 705 A.2d 642, 649 (D.C.1997) (quotation marks and citations omitted).

The impartiality of the jury in a criminal trial is a primary safeguard of our criminal justice system. Two essential ways of preserving the jury's impartiality are exclusion of jurors who have a personal bias against or in favor of a party and shielding of the empaneled jurors from evidence or information about the matter at issue that has not been presented pursuant to evidentiary and other rules that govern a criminal proceeding. When jurors are exposed to "extra judicial information," the trial court must address whether the jury's deliberations have been tainted by evidence not presented during the course of the trial.

*Ransom v. United States,* 932 A.2d 510, 515–16 (D.C.2007) (citations omitted).

■ Just as the trial court has an obligation to investigate a plausible claim of juror bias, *see Medrano–Quiroz, supra,* 705 A.2d at 649 (citing *Leeper v. United States,* 579 A.2d 695, 698 (D.C.1990)), it has an obligation to investigate a plausible claim that the jury has been exposed to extrinsic evidence. Thus, when it is alleged that a jury has been exposed to extrinsic evidence, the trial court should inquire as to the nature of the evidence and how the jury came to be exposed to it. *See Ransom, supra,* 932 A.2d at 514; *Wilson v. United States,* 380 A.2d 1001, 1004 (D.C.1977) (holding that the trial court erred by failing to hold a hearing when it was alleged the jurors had witnessed the defendant being arrested and led away in handcuffs).

An inquiry was particularly necessary here where neither the parties nor the judge knew whether the jury's note referred to extrinsic evidence. Both the government and the defense have submitted plausible but conjectural explanations for the note. The government, following the trial court's interpretation, believes the witness's statement was made on the stand in response, though perhaps not in immediate response, to a question and that the defense simply did not object, either because it did not hear the answer or failed to pay attention. Appellant, by contrast, offers the equally probable explanation that the remark could have been something said by a witness to the jury (or even just one juror) while the parties' counsel, the judge and the court reporter were engaged in a bench conference. With such ambiguity present, the trial court, without additional inquiry, had no factual basis on which to determine that its interpretation of the utterance was correct. *See Alcindore v. United States,* 818 A.2d 152, 157 (D.C.2003) (holding that a jury's note, which was subject to at least two reasonable interpretations, exhibited sufficient confusion and ambiguity to warrant a response by the court); *Murchison*

*v. United States,* 486 A.2d 77, 83 (D.C. 1984) (expressing approval when a trial court requested a jury to be more explicit in its inquiry when the jury submitted an ambiguous note). Without an inquiry, there was simply no way of knowing which interpretation of the utterance was correct.

 A trial judge, of course, does not need to engage in an inquiry when an allegation of bias or reliance on extrinsic evidence is speculative. *See Medrano-Quiroz, supra,* 705 A.2d at 649 (noting that a court need only hold a hearing when a juror's impartiality is "plausibly" called into doubt). In this case, however, the jury's note, implying that one or more jurors had heard the remark and were seriously interested in considering it as evidence, was more than sufficient to trigger the trial court's duty to inquire further. Indeed, the note suggested that jurors believed the "muttered" statement to be qualitatively different from the normal testimony they had heard. While inquiring into a jury's thinking is—as the trial court correctly recognized—always fraught with risk, in the circumstances here some limited inquiry about the remark the jurors had in mind was necessary to forestall potential reliance by the jury on a statement it had no business considering.

### B. Was the Error Harmless?

 The parties disagree as to which harmlessness analysis should drive our inquiry: appellant argues that the error is one of constitutional magnitude subject to the *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), standard, whereas the government argues that the less exacting standard of *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), applies. We need not determine which standard applies because, under either standard, we find the government has not met its burden of negating prejudice. Under *Kotteakos,* the government has the burden to demonstrate that, "without stripping the erroneous action from the whole, [ ] the judgment was not substantially swayed by the error. . . ." *Kotteakos, supra,* 328 U.S. at 765, 66 S.Ct. 1239. Ultimately, we do not see how the government could demonstrate that the jury's consideration of the utterance was harmless considering that no one knows exactly what the utterance was.

Accordingly, for the reasons stated, we

*Reverse and remand for a new trial.*