*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CF-129

MICHAEL SANDERS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF3-12936-13)

(Hon. Patricia A. Broderick, Trial Judge)

(Argued March 12, 2015                              Decided July 2, 2015)

*Stefanie Schneider*, Public Defender Service, with whom *James Klein* and *Alice Wang*, Public Defender Service, were on the brief, for appellant.

*L. Jackson Thomas II*, Assistant United States Attorney, with whom *Ronald C. Machen, Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *John P. Mannarino*, and *Marco A. Palmieri*, Assistant United States Attorneys, were on the brief, for appellee.

Before THOMPSON and MCLEESE, *Associate Judges*, and PRYOR, *Senior Judge*.

MCLEESE, *Associate Judge*: Appellant Michael Sanders seeks reversal of his conviction for assault with intent to commit robbery ("AWIR"). Mr. Sanders argues that the jury was not given adequate guidance in response to a jury note

about an element of the offense. We agree. Concluding that the error was not harmless, we reverse and remand for further proceedings.

# I.

The government presented the following evidence at trial. On May 17, 2013, Hoa Truong was riding a Metro train. According to Mr. Truong, as the train approached the Brookland Metro station, a person whom Mr. Truong later identified as Mr. Sanders approached Mr. Truong and asked for money. Mr. Truong told Mr. Sanders that he did not have any money, and Mr. Sanders turned away and walked to the rear of the car. Mr. Sanders later approached Mr. Truong again and asked for Mr. Truong's phone. After Mr. Truong refused to give Mr. Sanders the phone, Mr. Sanders punched Mr. Truong in the left eye. Mr. Truong started to run away, but he was hit from behind by someone and fell to the ground. The train then stopped, and someone helped Mr. Truong by pulling him off of the train.

The government also introduced testimony from Adam Hodge, who was riding in the same Metro car. As the train approached the Brookland Metro station, Mr. Hodge saw Mr. Truong "getting beaten." Mr. Hodge did not see Mr. Sanders

speak to Mr. Truong.  He saw other people hit Mr. Truong, and saw Mr. Sanders hit Mr. Truong once as everybody was getting off the train.  When asked what role Mr. Sanders played in the incident, Mr. Hodge explained that Mr. Sanders "was just the last person to hit him."

At the close of the evidence, the trial court instructed the jury that the elements of AWIR, each of which the government was required to prove beyond a reasonable doubt, were (1) "Michael Sanders with force or violence injured or attempted to injure Hoa Truong"; (2) "he did so voluntarily, on purpose and not by mistake or accident"; (3) "at the time . . . Michael Sanders had the apparent ability to injure Hoa Truong"; and (4) "at the time of the attempt to injure, Michael Sanders intended to rob Hoa Truong."

On the second day of deliberations, the jury sent a note that included the following question:

> [W]ith respect to . . . the 4th element of assault with the intent to commit robbery, what is the meaning of "at the time of the attempt to injure?"  If the defendant intended to rob [Mr.] Truong immediately prior to the assault, is that "at the time"?

The parties disagreed on the proper response.  The United States took the position that the answer was "yes," because an intent to rob "immediately prior to

the assault" satisfied the requirement that the intent be "at the time of the attempt to injure." Defense counsel argued that "the intent and the act have to coincide," and that "legally the answer is no." After further discussion, the trial court answered the question by responding, "That is for the jury to decide."

## II.

Mr. Sanders argues that reversal is required because the jury was not given an adequate answer to its question about an element of the offense of conviction. We agree.

"The decision on what further instructions, if any, to give in response to a jury question lies within the sound discretion of the trial court." *Yelverton v. United States*, 904 A.2d 383, 387 (D.C. 2006) (internal quotation marks omitted). "When a jury sends a note which demonstrates that it is confused, the trial court must not allow that confusion to persist; it must respond appropriately." *Alcindore v. United States*, 818 A.2d 152, 155 (D.C. 2003); *see also, e.g., Murchison v. United States*, 486 A.2d 77, 83 (D.C. 1984) (trial court is under obligation to respond to jury's confusion where jury "makes explicit its difficulties") (internal

quotation marks omitted). The trial court is required to clear away any confusion "with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 613 (1946).

The jury in this case asked a legal question about the meaning of an element of AWIR: "[W]hat is the meaning of 'at the time of the attempt to injure?' If the defendant intended to rob [Mr.] Truong immediately prior to the assault, is that 'at the time'?" The parties agree on appeal about the correct answer to that legal question: the intent to rob must exist at the time of the assault. *See Singleton v. United States*, 488 A.2d 1365, 1367 n.2 (D.C. 1985) (elements of AWIR are: "1) that defendant assaulted complainant, and 2) at the time of the assault, the defendant acted with specific intent to commit the offense of robbery upon the complainant") (internal quotation marks omitted). It follows that the jury should have been clearly told that the intent to rob must exist at the time of the assault. Instead, the trial court said that the answer to that legal question was up to the jury. We conclude that the jury was not given adequate guidance in response to its question. *See, e.g.*, *Alcindore*, 818 A.2d at 157-58 (where jury demonstrated confusion about trial court's instructions, court was required to re-instruct jury to address confusion).

We are not persuaded by the United States's arguments to the contrary. First, the United States argues that the jury was asking whether intent to rob at the time of the assault could be inferred from intent to rob immediately before the assault. The jury's question, however, was worded as a question about the meaning of the "at the time" requirement, not as a question about the permissible bounds of temporal inference. Even if the note had been ambiguous, moreover, the appropriate response would have been either to clarify the ambiguity or to take steps to ensure that any potential confusion was dispelled. *See Alcindore*, 818 A.2d at 157 (where jury note was subject to at least two reasonable interpretations, note exhibited sufficient ambiguity as to require response from trial court); *see also Garrett v. United States*, 20 A.3d 745, 748-49 (D.C. 2011) (where jury note was ambiguous as to whether jury had heard extrinsic evidence, trial court had duty to inquire further); *Murchison*, 486 A.2d at 83 (expressing approval of trial court's request that jury clarify ambiguous note).

Second, the United States argues that the pre-deliberation instructions to the jury clearly stated that an intent to rob had to exist at the time of the assault, and the trial court's response to the jury note "appropriately left the jury to rely on the [pre-deliberation] instructions." The jury note, however, indicated that the jury was unsure about how to understand the pre-deliberation instructions. In such

circumstances, simply redirecting the jury to the pre-deliberation instructions would not have been a sufficient response. *See, e.g.*, *Gray v. United States*, 79 A.3d 326, 339 (D.C. 2013) ("[W]e cannot conclude that the court's re-reading of the instructions the jury had already heard (and had the opportunity to read and re-read for themselves) was effectively designed to dispel the likely misunderstanding."). In any event, the trial court did not tell the jury that the pre-deliberation instructions had already answered the jury's question. Rather, the trial court told the jury that the jury could decide how to answer that question. Thus, the response to the jury's question by its terms authorized the jury to find Mr. Sanders guilty even if the jury found that Mr. Sanders did not intend to rob at the time of the assault. In other words, the response to the jury's question undermined rather than reinforced the statement in the pre-deliberation instructions requiring that an intent to rob exist at the time of the assault.

We therefore conclude that the response to the jury note was not adequate to dispel the jury's confusion. We also conclude that the error was not harmless. The United States acknowledges that any error in this case would require reversal unless the error "was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see also Potter v. United States*, 534 A.2d 943, 946 (D.C. 1987) ("The provision of an answer to a jury note that is adequate to

dispel jury confusion on a controlling issue of a case is such an important aspect of due process of law that we would have to be satisfied beyond a reasonable doubt that an omission to provide [such an answer] was harmless before we could conclude that it did not vitiate the verdict."). We cannot conclude beyond a reasonable doubt that the error did not affect the verdict in this case. Mr. Truong testified that Mr. Sanders twice tried to obtain property from Mr. Truong, and Mr. Hodge testified that Mr. Sanders threw only a single punch, just as everyone was leaving the train. This testimony would have permitted a reasonable juror to conclude that although Mr. Sanders had an intent to rob Mr. Truong at an earlier point, there was a reasonable doubt as to whether Mr. Sanders still had that intent at the time he struck Mr. Truong. *See generally Longus v. United States*, 52 A.3d 836, 857 (D.C. 2012) ("The jury could, of course, have picked and chosen among the various parts of these witnesses' testimony, crediting some, disbelieving others."). The response to the jury note erroneously authorized such a juror to find Mr. Sanders guilty.

Accordingly, the judgment of the trial court is reversed, and the case is remanded for further proceedings.

*So ordered*.