# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The Estate of Jane Doe 202, by John Doe MM and John Doe HS, each of whom holds power of attorney for Jane Doe, Petitioner,

v.

City of North Charleston, Leigh Anne McGowan, individually, Charles Francis Wohlleb, individually, and Anthony M. Doxey, individually, Respondents.

Appellate Case No. 2021-000721

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Charleston County
The Honorable Deadra L. Jefferson, Circuit Court Judge

---

Opinion No. 28180
Heard May 17, 2023 – Filed September 29, 2023

---

## AFFIRMED IN RESULT

---

Gregg E. Meyers, of Byron, M.N., for Petitioner Jane Doe 202.

Sandra J. Senn, of Senn Legal, LLC of Charleston, and Andrew F. Lindemann, of Lindemann Law Firm, P.A. of Columbia, for Respondents City of North Charleston, Anthony M. Doxey, Leigh Anne McGowan, and Charles Frances Wohlleb.

**JUSTICE JAMES:** This appeal arises from a defense verdict in a case alleging law enforcement officers and the City of North Charleston violated the civil rights of Jane Doe, a vulnerable adult. During its deliberations, the jury submitted several questions, the last of which was ambiguous. The trial court answered the question without requesting clarification from the jury and denied Doe's request to charge the jury on nominal damages for a third time. The court of appeals affirmed. *Est. of Doe 202 by Doe MM v. City of N. Charleston*, 433 S.C. 444, 858 S.E.2d 814 (Ct. App. 2021).[1] We hold the trial court erred in not requesting clarification, but we conclude the error was harmless. We therefore affirm the court of appeals in result.

## I.

In late 2012, Doe's daughter (Daughter) moved from North Carolina into Doe's home in a quiet neighborhood in North Charleston. Very shortly thereafter, Doe was diagnosed with Alzheimer's disease and dementia. She was unable to drive, make a telephone call, use the restroom unassisted, dress herself, prepare food, or even open containers of food.

On the evening of March 27, 2014, Daughter went out for a work event and, according to Daughter, returned home around 9:00 p.m. Daughter testified she went back outside around 10:00 p.m. to retrieve something from her car. She claims she locked herself out of the house, so she knocked on the front door and called for Doe to let her in. Daughter testified she went to the back of the house and Doe let her in through the sliding glass back door. Daughter went to bed upstairs. A few minutes after 10:00 p.m., a neighbor called the City of North Charleston Police Department and reported Daughter was outside Doe's home banging on the front door and yelling for Doe to let her in. Officer McGowan responded within minutes and knocked on the front door, but no one answered. Officer McGowan noticed the interior lights of a car parked in the driveway were on; she saw wine bottles in the back of the car and found a pair of high heels beside the driver's side door. Officer McGowan went around to the back of the house and found in the yard what she described as a leather bag with fresh blood on it. At Officer McGowan's request, dispatch called the neighbor who reported the disturbance. Dispatch was told by the neighbor that Doe had dementia. Officers Wohlleb and Doxey responded to the scene. The officers entered the dwelling through the unlocked back sliding glass door, where they encountered Doe. The officers asked Doe if everything was okay, and she said it

---

[1] Doe died during the pendency of this appeal, but we still refer to the plaintiff as "Doe."

was. They asked Doe who else was in the home, and Doe told them Daughter was upstairs. The officers asked Doe to escort them upstairs.

Accounts of what occurred next differ significantly between the two sides, but the differing accounts mean little to the issues before us. Daughter testified she was asleep in her bed when she was awakened by a person in her bedroom; she claims she did not know who the person was and thought the person was there to do her harm, so she yelled at the person to get out. Daughter claims Officer McGowan flung her out of bed and restrained her. The officers contend Daughter was asleep fully clothed on top of the covers on the bed, had a large red wine stain on her shirt, and had a bleeding gash on her knee. One asked if Daughter needed medical attention and she said she did not. Wohlleb and Doxey left the room, and, according to Officer McGowan, Daughter began screaming at Doe, flailed her arms, and poked McGowan in the eye. Daughter was arrested for assault on a police officer and taken to jail. Doe was left alone until approximately noon the following day, when Daughter called Doe's brother and asked him to check on Doe. The brother testified he found Doe in obvious mental distress and wearing a soiled adult diaper. Doe was eventually taken to the hospital and was diagnosed with a urinary tract infection.

Doe sued the officers and the City. Pertinent to this appeal are Doe's causes of action against the officers and the City pursuant to 42 U.S.C. § 1983. Doe claims the officers violated her Fourth Amendment rights by entering the dwelling without a warrant. Doe's section 1983 claim against the City is based on Doe's contention that the City engaged in deliberate indifference to Doe's rights by failing to properly train its officers.

## II.

Doe's appeal centers on the trial court's response to the last of several questions submitted during deliberations.

The substance of the trial court's first and second overall charge to the jury is not an issue in this appeal, but a summary of the charge relevant to the section 1983 claims against the officers and the City will aid understanding of the issue before us. The trial court instructed the jury that in order to prove her section 1983 claim against the officers, Doe must establish: (1) the officers committed an act that deprived Doe of a right secured by the United States Constitution; (2) the officers acted under color of state law; and (3) the officers' actions proximately caused Doe's damages. The officers do not dispute they were acting under color of state law. As to the first element, the trial court charged the jury that a warrantless entry into one's dwelling is a per se violation of the Fourth Amendment to the United States Constitution. The

officers did not dispute they entered without a warrant but claimed exigent circumstances justified the warrantless entry. The trial court charged the jury that the existence of exigent circumstances, if proven by the officers, would excuse the warrantless entry. As to the third element of Doe's section 1983 claim against the officers, the trial court instructed the jury that Doe must prove the constitutional violation was the proximate cause of Doe's injuries.

With regard to Doe's deliberate indifference claim against the City, the trial court instructed the jury that Doe must prove (1) the officers violated Doe's constitutional rights; (2) they were acting under color of state law; (3) the City failed to train its officers, thus illustrating a deliberate indifference to the rights of those with whom the officers came into contact; and (4) the City's failure to train actually caused the officers to violate Doe's rights and was so closely related to the violation of rights as to have been the moving force that cause damage to Doe. The trial court's instructions on the specifics of deliberate indifference are not relevant to this appeal.

The trial court then gave a relatively typical jury charge on actual damages applicable to the claims against the officers and the City. Pertinent to this appeal is the trial court's subsequent instruction on nominal damages:[2]

> [I]f you return a verdict for the plaintiff on a section 1983 claim but the plaintiff has failed to prove actual or compensatory damages for her claim[,] then you must award nominal damages of one dollar for that claim. A person whose federal rights were violated is entitled to a recognition of that violation even if he or she suffered no actual injury. Nominal damages such as one dollar are designed to acknowledge the depr[i]vation of a federal right even where you find no actual injury occurred.

There were no objections to the foregoing instructions, and the jury retired to deliberate, accompanied by three separate verdict forms pertaining to the three officers and one verdict form pertaining to the City. The parties advised the trial court that all agreed to the verdict forms. The first question on the officers' forms was, "Do you find that Plaintiff has proven by a preponderance of the evidence that [the officer] violated [Jane] Doe's constitutional rights by making a warrantless entry into [Jane] Doe's residence . . . . ?" The first question on the City's form was, "Do you find that the Plaintiff has proven by a preponderance of the evidence that the

---

[2] Nominal damages are important in a section 1983 case because if a jury awards even nominal damages to the plaintiff, the trial court may award reasonable attorney's fees under 42 U.S.C. § 1988.

City of North Charleston violated [Jane] Doe's constitutional rights by being deliberately indifferent with regard to training its officers?" All four forms instructed the jury that if the answer to the first question was "No," the jury was to "stop deliberating on this cause of action and sign the bottom of this form."

The damages question on each officer's form read: "[D]o you find that Plaintiff has proven by a preponderance of the evidence that the constitutional violation caused damages to [] Doe?" The damages question on the City's form read substantially the same. None of the forms specifically referenced nominal damages.

The jury submitted several notes during deliberations. In its first note, the jury asked the trial court to repeat the entire jury charge, which the trial court did. Another note asked the trial court to define "preponderance," which it did. Another note requested a copy of section 1983, which the trial court declined.

Along with its note asking for a copy of section 1983, the jury submitted the note that is the focus of this appeal. The note read: "For there to be a violation of a civil right, 4th Amendment, the plaintiff must demonstrate through the preponderance of the evidence to be bodily harm or injury or mental i.e. damages." The trial court engaged in an extensive colloquy with counsel as to how this question should be interpreted and answered.

The trial court initially stated it was "not certain whether [the jury had] the concept of proximate cause or damages confused." The trial court read the note again and stated, "[T]he more I read this note the more I think they have confused damages in the elements of section 1983." The trial court continued the discussion and explained, "I think all they're asking is in order for there to be a violation of a civil right[] [under the] 4th Amendment the plaintiff must demonstrate . . . there must be bodily harm or injury and that's really not the inquiry." The trial court decided to recharge the jury on the elements of a section 1983 claim and stated it would reinstruct the jury on damages if the jury asked, and if the jury asked for more, it would reinstruct more. Doe argued the jury might be confused if it were not reinstructed on nominal damages, and counsel went back and forth with the trial court on that point. The trial court concluded the jury would submit another question if it wanted additional instructions.

During the subsequent reinstruction, the trial court repeated the three basic things a plaintiff must prove to establish a section 1983 claim: (1) a constitutional violation; (2) acting under color of state law, and (3) and that the plaintiff "must prove by the greater weight or preponderance of the evidence that the constitutional violation was the proximate cause of her injuries." The trial court stopped at that

point and did not go into detail about the various damages—including nominal damages—the jury could award Doe if it determined any defendant had violated her federal constitutional rights.

After this recharge, Doe argued the jury could "conceivabl[y] be hung up on whether the nominal damage fits as part of the injury." The trial court responded, "I think they were unclear about what constitutes the elements of the 1983 cause of action. They don't even get to nominal damages unless you've proven that there was a constitutional violation."[3]

The jury answered "No" to each of the first questions on all four verdict forms and deliberated no further. All four forms included subsequent questions pertaining to damages, which the jury did not reach because of its "No" answer to the first question.

## III.

### A. Did the trial court err in failing to clarify the jury's question?

Doe contends the disputed question inquired into damages (including nominal damages), not the threshold issue of whether there was a constitutional violation. Doe argues the trial court's refusal to again instruct the jury on nominal damages was misleading, incorrect, and omitted the language responsive to the jury's actual question. In other words, Doe does not argue the disputed recharge was substantively incorrect; rather, Doe argues the recharge did not go far enough.

The court of appeals concluded the disputed question was ambiguous, stating, "The trial court could just as well have reached the conclusion the jury was asking about damages and not liability . . . . . Still, given that we believe both views of the jury's question are possible, we believe the trial court did not abuse its discretion." *Doe*, 433 S.C. at 454, 858 S.E.2d at 819.

We agree with the court of appeals that the disputed question was susceptible of more than one meaning. However, the court of appeals erred in applying a deferential standard of review of the trial court's decision as to how it would respond to the question. Other jurisdictions have addressed the general question of how a

---

[3] In her brief, Doe contends a simple "No" answer to the disputed question from the jury would have sufficed. During oral argument, Doe argued she requested the trial court to give the jury a "No" answer, but that request is not in the record.

trial court should respond to a jury question when the question reflects confusion about a legal issue:

> "When a jury sends a note which demonstrates that it is confused, the trial court must not allow that confusion to persist; it must respond appropriately." *Alcindore v. United States*, 818 A.2d 152, 155 (D.C. 2003); *see also, e.g.*, *Murchison v. United States*, 486 A.2d 77, 83 (D.C. 1984) (trial court is under obligation to respond to jury's confusion where jury "makes explicit its difficulties") (internal quotation marks omitted). The trial court is required to clear away any confusion "with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 613, 66 S. Ct. 402, 90 L.E.d 350 (1946).

*Sanders v. United States*, 118 A.3d 782, 783-84 (D.C. 2015). If confronted with an ambiguous jury question, the trial court cannot select one reasonable interpretation and ignore other reasonable interpretations. If the parties do not agree how the trial court should respond to the question, the trial court must seek clarification from the jury. Failure to do so is an error of law.

## B. Is a new trial required?

Doe and the dissent contend the trial court's error requires reversal and a new trial. They correctly note, as did the dissent in the court of appeals, that a plaintiff in a section 1983 claim does not have to prove "traditional damages" and that "the violation of a [constitutional] right is itself considered an injury." *Doe*, 433 S.C. at 455, 858 S.E.2d at 819-20 (Geathers, J., dissenting) (citing *Uzuegbunam v. Preczewski*, 592 U.S. ___, 141 S. Ct. 792, 802 (2021)). Doe contends the question of whether there was a constitutional violation and the unique role of nominal damages in a section 1983 action go hand in hand such that a recharge on the elements of a section 1983 claim without a recharge on nominal damages is manifestly prejudicial. Under the circumstances present in this case, we disagree.

The officers' verdict forms instructed the jury to first determine whether "[the officer] violated [Jane] Doe's constitutional rights by making a warrantless entry into [Jane] Doe's residence . . . ." The specificity of that question—whether Doe had proven the officer had made an unconstitutional warrantless entry—is important. If the jury had answered "Yes" to that question, the jury would have moved to the damages questions. The jury's "No" answer to the first question establishes that the jury determined Doe had not proven an unconstitutional warrantless entry. The "No" answer renders moot the question of damages—nominal or otherwise.

We disagree with the dissent's contention that we are "repeating the trial court's mistake."  Rather, we hold that in this case the trial court's mistake did not affect the verdict.  A repeat of the nominal damages charge would not have resulted in a different answer to the first question on the verdict forms.[4]  Therefore, the trial court's error in not seeking clarification of the question was harmless.  *See State v. Middleton,* 407 S.C. 312, 317, 755 S.E.2d 432, 435 (2014) (holding in a harmless error analysis, the inquiry is whether the erroneous charge contributed to the verdict rendered); *see also Horry Cnty. v. Laychur*, 315 S.C. 364, 368, 434 S.E.2d 259, 262 (1993) ("In order to warrant reversal for refusal of the trial judge to give requested jury instructions, such refusal must have been both erroneous and prejudicial.").

## Conclusion

The court of appeals erroneously applied a deferential standard of review in reviewing the trial court's reasoning of how the trial court would respond to the jury's ambiguous question.  We hold that when a trial judge receives an ambiguous question from the jury and the parties do not agree how the trial court should respond, the trial court must seek clarification from the jury.  Once the jury has clarified the question, the trial court may answer the question in the manner permitted by law.  Here, we hold that a recharge on nominal damages would have had no impact on the jury's "No" answer to the first question on each verdict form.  Therefore, the error was harmless and we affirm the court of appeals in result.

**AFFIRMED IN RESULT.**

**KITTREDGE, Acting Chief Justice, and Acting Justice Jean H. Toal, concur. HILL, J., dissenting in a separate opinion in which Acting Justice Kaye G. Hearn, concurs.**

---

[4] The dissent refers to the verdict forms as "ambiguous" because they do not mention nominal damages.  The parties agreed to the verdict forms.

**HILL, J., dissenting:** I agree with the majority that the trial court erred by not asking the jury to clarify its question. I respectfully dissent because, in my view, this error prejudiced Doe, and the trial court's ensuing recharge doomed her case at a pivotal point.

A jury's request for clarification of the law is often the defining moment (literally) of a trial, demanding a deft touch by the trial judge. *Horry Cnty. v. Laychur*, 315 S.C. 364, 369, 434 S.E.2d 259, 262 (1993); *State v. Smith*, 304 S.C. 129, 132, 403 S.E.2d 162, 164 (Ct. App. 1991). We have held that the stakes are raised at this critical moment, and the risk of prejudice rises when a bad supplemental charge is given in response to the jury's question. *Laychur*, 315 S.C. at 369; *see also McKnight v. State*, 378 S.C. 33, 48, 661 S.E.2d 354, 362 (2008) (because bad charge was in a supplemental instruction, it "likely attained special significance in the minds of jurors"); *Lowry*, 376 S.C. 499; *State v. Blassingame*, 271 S.C. 44, 46–47, 244 S.E.2d 528, 529–30 (1978). One of the strongest presumptions in law is that jurors are presumed to follow their instructions. When, as here, a supplemental instruction dilutes and distorts a previous charge on the same point of law, then "the judge's last word is apt to be the decisive word." *Bollenbach v. United States*, 326 U.S. 607, 612 (1946). As best we can tell, the jury had been deliberating for about six hours before submitting the question that prompted the bad recharge. It reached a verdict less than fifteen minutes after it received the trial court's misleading answer.

The jury's question bears repeating: "[F]or there to be a violation of a civil right, 4th Amendment, the plaintiff must demonstrate through the preponderance of the evidence to be bodily harm or mental i.e. damages." One straightforward–and correct–answer to the question would have been the answer Doe urged the trial court to give: that a plaintiff in a §1983 case may prevail without proving damages. And, in fact, the trial court's initial instinct was that the jury appeared to be asking whether "in order for there to be a violation of a civil right," the plaintiff must prove she suffered bodily harm or mental injury. Unfortunately, the trial court suppressed that instinct, remarking "that's really not the inquiry. The inquiry is whether the plaintiff has proven by a preponderance of the evidence three elements [of a § 1983 claim]."

The trial court then recharged the jury, in part:

> In order to prove her claims the plaintiff must establish by
> the greater weight or the preponderance of the evidence
> the following three elements: The defendants committed
> an act which operated to deprive the plaintiff of her rights
> secured by the United States Constitution. Second that the

defendants acted under color of state law. And finally the defendants actions were the proximate cause of the plaintiff's damages.

Each of these elements must be established separately for the plaintiff to prevail on her claim. If the plaintiff proves all these elements by the greater weight or the preponderance of the evidence for her claim then you must return a verdict in favor of the plaintiff on that claim. If however she fails to prove any of these elements for her particular claim you must return a verdict for the defendants on that claim.

The trial court therefore recharged the jury—in response to their expressed confusion about damages—that, to win her case, Doe had to prove three elements, one of which was that the Defendants' actions were the proximate cause of her damages. This is not the law; a plaintiff in a §1983 civil rights case does not have to "prove" nominal damages, and in fact, the trial court had already twice instructed the jury that it could award nominal damages only in the event the plaintiff had not proven any actual damages. Doe did not have to prove the existence, amount, or causation of nominal damages. The importance of nominal damages in §1983 cases—and its central importance to the issue before us—was well stated by Judge Geathers in his dissent to the majority opinion of the Court of Appeals. The trial court's third charge removed any reference to nominal damages, leaving the jury with the indelible impression that the answer to their question was: "Yes. For there to be a civil rights violation, the plaintiff must prove her damages by a preponderance of the evidence." This was consistent with the trial court's earlier charge that "[d]amages are never presumed and the burden is on the plaintiff to present evidence that supports the assessment of damages."

The trial court erred by rejecting Doe's suggestion that the jury was likely struggling to understand how the concept of nominal damages related to the elements of a § 1983 claim. The majority finds the error irrelevant because it believes the verdict forms cured any confusion the jury may have had regarding whether Doe was required to prove damages to prevail on her claim. I cannot agree. The verdict form against the City, for example, was structured as follows:

1. Do you find that the Plaintiff has proven by a preponderance of the evidence that the City of North Charleston violated Rhonda Doe's constitutional rights by



being deliberately indifferent with regard to training its officers?

___ yes (go to #2)

___ no (stop deliberations on this cause of action and sign the bottom of this form)

2.  If you answered yes to #1, do you find that Plaintiff has proven by a preponderance of the evidence that any such constitutional violation by the City of North Charleston proximately caused damage to Rhonda Doe?

    ___ yes (go to #3)

    ___ no (stop deliberations on this cause of action and sign the bottom of this form)

3.  If the answers to #1 and #2 are yes, please state the amount of damages that should be awarded to Plaintiff for the allegation that the City of North Charleston was deliberately indifferent with regard to training its officers.

    $_____ (please state damages award in numbers)

The majority is quite right that had the jury answered question one "yes," it would have then "moved to the damages questions." But, with great respect, I disagree with my friends in the majority that, had the jury answered question one "yes," then they would have understood they had to then award her at least nominal damages. The verdict forms do not mention nominal damages, and this reading of the forms overlooks question two, which asks if Doe proved the defendants' constitutional violation proximately damaged her. The fact that proof of proximate cause was the gist of question two reinforces the reality that the verdict forms contradicted rather than clarified the court's instruction.

The majority is repeating the trial court's mistake. Rather than clearing up the muddle caused by the trial court's recharge, the ambiguous verdict forms added to the confusion. All we can know for certain is that the jury resumed its deliberations armed with a misleading instruction on the applicable law and almost immediately reached a verdict. (If nothing else, this case is a good example of when the jury should be furnished with a written copy of the charge).

The majority concedes it was error to recharge the jury without knowing what the jury was really asking. In other words, the majority rules it is error to answer a jury's ambiguous question about the law without seeking clarification. As the majority

suggests, when faced with a jury question that could be interpreted as asking two different things, a trial court should not take a gamble on which interpretation is correct. The majority rightfully holds that we, as an appellate court, should not defer to the trial court's gamble as an acceptable act of discretion. There is no way to give an unambiguous answer to an ambiguous question, nor is it possible to cure an ambiguous recharge with an ambiguous verdict form. We should not re-roll the dice by hoping the verdict forms filtered out the flawed charge.

I therefore respectfully dissent.

**Acting Justice Kaye G. Hearn, concurs.**