*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CF-0251

MICHAEL J. PATSCHAK, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2020-CF2-009368)

(Hon. Jason Park, Trial Judge)

(Argued October 30, 2024                    Decided May 22, 2025)

*Gregory M. Lipper* for appellant.

*Mark Hobel*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney at the time the brief was filed, and *Chrisellen R. Kolb*, *Elizabeth H. Danello*, *Alec Levy*, and *Joshua Hall*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and MCLEESE and DEAHL, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellant Michael J. Patschak appeals from his conviction for robbery, challenging the sufficiency of the evidence and the trial court's responses to two juror notes. We affirm.

## I. Evidence at Trial

The evidence at trial included the following. Mr. Patschak was arrested at a protest after he and a police officer, Officer Davon Todd, got into an altercation. Several videos depicting the incident were introduced into evidence at trial. Nevertheless, Officer Todd and Mr. Patschak testified at trial to different versions of the incident.

Officer Todd testified that Mr. Patschak started the altercation by shoving Officer Todd from behind and causing him to fall. Officer Todd decided to arrest Mr. Patschak for assaulting an officer and began to grapple with Mr. Patschak. Mr. Patschak resisted, and during the ensuing struggle, Officer Todd's body-worn camera (BWC) detached and landed on the curb. Officer Todd testified that Mr. Patschak removed the BWC from Officer Todd's vest by twisting the BWC. Officer Todd then retreated toward other officers because he was concerned for his safety. As he did so, he saw Mr. Patschak pick up the BWC and place it in his backpack.

Mr. Patschak testified that Officer Todd began the altercation by running into Mr. Patschak. Mr. Patschak was then pushed by other officers and tripped and fell into Officer Todd. Mr. Patschak's hand touched Officer Todd's BWC for about 1/30th of a second during the altercation, and Officer Todd's BWC was already in a

twisted position at the time Mr. Patschak touched it. Less than four seconds after separating from Officer Todd, Mr. Patschak picked up the BWC. At this point, Officer Todd was about three to five feet away from Mr. Patschak. Mr. Patschak then put the BWC in his backpack.

Mr. Patschak was subsequently involved in an altercation with another officer that led to Mr. Patschak's arrest. During a search of Mr. Patschak's backpack after his arrest, an officer found Officer Todd's BWC.

## II. Sufficiency of the Evidence

We review the sufficiency of the evidence "in the light most favorable to sustaining the conviction, giving deference to the factfinder's ability to weigh the evidence and make credibility and factual determinations." *Peery v. United States*, 849 A.2d 999, 1001 (D.C. 2004) (citation omitted). "We affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Alleyne v. United States*, 327 A.3d 472, 479 (D.C. 2024) (internal quotation marks omitted).

To find Mr. Patschak guilty of robbery, the jury was required to find that Mr. Patschak took Officer Todd's BWC "by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in

fear, . . . from the person or immediate actual possession of another." D.C. Code § 22-2801. Mr. Patschak first argues that the evidence was insufficient to support a finding that he took the BWC "by sudden or stealthy seizure or snatching." We hold that the evidence was sufficient to support a finding that Mr. Patschak committed a sudden or stealthy seizure or snatching when he picked the BWC up from the curb.

The jury could reasonably have found that Mr. Patschak's taking the BWC "very fast" and "[l]ess than four seconds" after separating from Officer Todd was a sudden or stealthy seizure or snatching. *See, e.g.*, *Leak v. United States*, 757 A.2d 739, 741, 742 (D.C. 2000) (defendant took bike from ground after another person pulled complaining witness from bike; "[R]obbery includes the stealthy snatching of an item, even if the victim is not actually holding, or otherwise attached to the object . . . ."); *Johnson v. United States*, 756 A.2d 458, 462-63 (D.C. 2000) (defendant picked up wallet from ground after wallet fell from victim during struggle); *cf. Bailey v. United States*, 257 A.3d 486, 499 (D.C. 2021) (Glickman, J., concurring) (where defendant who was standing outside open car window abruptly picked up shoebox from complainant's lap, defendant's "sudden seizure or snatching" sufficed to support robbery conviction, even though taking was not stealthy or against resistance).

We are not persuaded by Mr. Patschak's argument that his taking of the BWC was not a sudden or stealthy seizure or snatching because Officer Todd was already walking away when Mr. Patschak picked up the BWC. Mr. Patschak distinguishes his taking of the BWC from the actions of a pickpocket, implying that a sudden or stealthy seizure or snatching encompasses only conduct that constitutes or is similar to pickpocketing. The language of the robbery statute does not reflect such a limit, and the cases just cited demonstrate that the robbery statute is not so limited. *Leak*, 757 A.2d at 741-42; *Johnson*, 756 A.2d at 463; *see also Bailey*, 257 A.3d at 499-500 (Glickman, J., concurring) ("[I]t would be a mistake to contend that the words 'sudden or stealthy seizure or snatching' should be read . . . as encompassing only pickpocketing or other takings that used stealth or some prior force to avert resistance to the taking.") (quoting D.C. Code § 22-2801; citing cases).

Second, Mr. Patschak argues that there was insufficient evidence to support a finding that the BWC was in Officer Todd's "immediate actual possession" when Mr. Patschak picked it up. D.C. Code § 22-2801. We disagree.

It is well settled that an object can be in a person's immediate actual possession for purposes of the robbery statute "even if the [person] is not actually holding, or otherwise attached to, the object . . . ." *Gray v. United States*, 155 A.3d 377, 386 (D.C. 2017) (brackets and internal quotation marks omitted); *see also, e.g.,*

*Leak*, 757 A.2d at 742-43 ("We have consistently and for many years given a broad meaning to the term 'immediate actual possession' . . . ."). "Immediate actual possession refers to the area within which the victim can reasonably be expected to exercise some physical control over the property." *Sutton v. United States*, 988 A.2d 478, 485 (D.C. 2010) (internal quotation marks omitted). "A thing is within [a person's] 'immediate actual possession' so long as it is within such range that [the person] could, if not deterred by violence or fear, retain actual physical control over it." *Id.* (emphasis and internal quotation marks omitted).

The evidence in this case indicated that Mr. Patschak and the BWC were about three to five feet away from Officer Todd when Mr. Patschak took the BWC. That distance is well within distances that this court has held fell within a complainant's immediate actual possession. *See, e.g.*, *Winstead v. United States*, 809 A.2d 607, 610-11 (D.C. 2002) (car "a few feet away" from complainant).

Mr. Patschak correctly points out that the issue is not solely one of distance. We are not persuaded, however, by Mr. Patschak's argument that the BWC was not in Officer Todd's immediate actual possession because Officer Todd could not have exercised physical control over the BWC when Mr. Patschak picked it up. An item is within a victim's immediate actual possession so long as the victim could, "if not deterred by violence or fear, retain actual physical control over it." *Sutton*, 988 A.2d

at 485 (internal quotation marks omitted). The jury could reasonably have inferred that Officer Todd could have picked up the BWC if he had not been deterred by a concern for his safety. Although Mr. Patschak argues that Officer Todd was deterred by the protesters as a group rather than Mr. Patschak individually, we conclude that a reasonable juror could infer that Officer Todd's safety concern was attributable at least in part to Mr. Patschak, who had just assaulted Officer Todd. In any event, this court has previously upheld a robbery conviction where the complainant's inability to prevent the taking was the result of assaultive conduct by a third party, rather than by the defendant. *See Leak*, 757 A.2d at 743 & n.4 (where defendant took bike from ground after another person pulled complainant from bike, bike was in complainant's immediate actual possession).

Third, Mr. Patschak argues that there was insufficient evidence that he intended to steal the BWC at the time he assaulted Officer Todd. We are not persuaded by this argument, which rests on the idea that Mr. Patschak had to have intended to steal the BWC at the time of the physical struggle between Mr. Patschak and Officer Todd. To the contrary, it suffices that Mr. Patschak intended to steal the BWC at the time he picked the BWC up and put it in his backpack. *See, e.g., Beck v. United States*, 402 A.2d 418, 421 (D.C. 1979) ("To support a charge of robbery, the government's proof must include evidence that the appellant took property from the complainant . . . with the specific intent to steal it.").

## III.  Responses to Jury Notes

Mr. Patschak also challenges the trial court's response to two of three notes the jury sent out during deliberations.  We see no basis for reversal.

## A.  Procedural Background

The initial jury instructions on the elements of robbery stated, in relevant part, that the government was required to prove beyond a reasonable doubt that Mr. Patschak "used force or violence to take the property, by taking the property by sudden or stealthy seizure or by snatching," and that Mr. Patschak "took the property . . . intending to steal it."

During deliberations, the jury sent a note asking the following question: "For the definition of robbery: Does the use of force or violence have to be with the intent of taking property[?]"  The government initially proposed answering in the negative, whereas Mr. Patschak's counsel suggested that the intent to take property must be "paired with the violence and force."  After further discussion, the parties agreed to the following instruction, which the trial court gave to the jury:

> The answer to the question is yes – the act constituting the force or violence—whether it be the use of actual force or physical violence or the sudden or stealthy seizure or snatching—must be accompanied by the specific intent to steal in order to satisfy the elements of robbery.

The jury sent a second note asking: "Does the intent for robbery need to occur at the exact time of the act of sudden or stealthy seizure?"  The trial court initially suggested reiterating the instruction given in response to the first note that the use of force had to be accompanied by an intent to steal.  The trial court raised the question, however, whether the term "accompanied" was too vague and asked the parties for their positions.  When the trial court suggested adding language in an effort to clarify the term "accompanied," counsel for Mr. Patschak objected and indicated a preference for reiterating the term "accompanied."  After further discussion, Mr. Patschak's counsel stated, "Judge, just thinking out loud here—and I'm not even sure this is—you know, should we address the situation if the intent to steal was formed after.  I think that's really, like, the crux of the question."  After the trial court expressed concern about the issue "being framed as a temporal thing," Mr. Patschak's counsel interjected, "Yeah, you know, I just think the safest instruction is the one that . . . .  Yeah, the 'accompanied' language."  The trial court adopted that approach and responded to the second note as follows: "To constitute a robbery, the act of sudden or stealthy seizure must be accompanied with the specific intent to steal."

Less than an hour later, the jury sent a third note asking: "Can accompaniment be a span of time other than the immediate taking of the property or can the entire events be accompaniment?"  During discussions about how to answer that note,

Mr. Patschak's counsel suggested that the jury could be told that the entire event could not be the accompaniment. The trial court then suggested telling the jury that "at the time of the taking, the person must have had the intent to steal," to which Mr. Patschak's counsel responded, "That's good." Mr. Patschak's counsel then suggested adding reference to force and violence. The trial court added such language and read the proposed response aloud. Mr. Patschak's counsel responded, "No objection." The trial court responded to the third note as follows: "To constitute a robbery, the person must have had the intent to steal at the time [the person] used force or violence to take the property—whether it be the use of actual force or physical violence or sudden or stealthy seizure or snatching."

## B. Analysis

Mr. Patschak argues that the trial court failed to adequately respond to the second and third jury notes. We can assume for purposes of this appeal that the trial court erred by responding to the jury's second note by simply repeating the somewhat ambiguous term "accompanied." *See generally, e.g.*, *Gray v. United States*, 79 A.3d 326, 337 (D.C. 2013) ("[W]here a jury has indicated its confusion on an important issue, it is not sufficient for the court to rely on more general statements in its prior charge.") (internal quotation marks omitted). Nevertheless,

Mr. Patschak did not preserve an objection to the trial court's response, instead affirmatively advocating for and then endorsing that response.

Mr. Patschak suggests that his counsel initially objected and then simply acquiesced in the trial court's later ruling. We are not persuaded. As we read the record, the trial court never even tentatively or implicitly ruled against any position stated by Mr. Patschak's counsel and instead ended up accepting the precise position advocated by Mr. Patschak's counsel.

Because Mr. Patschak did not preserve an adequate objection to the trial court's response to the second jury note, we review the trial court's response at most for plain error. *See, e.g.*, *Williams v. United States*, 858 A.2d 984, 991 (D.C. 2004) (applying plain-error standard where defense counsel, after tentative disagreement with trial court, ultimately stated preference for formulation ultimately given by court). We note that although the United States suggests in passing that the more stringent "invited error" standard applies, we need not address that suggestion.

To succeed under the plain-error test, which imposes a "formidable" burden, "[a]n appellant must show that (1) the trial court erred; (2) the error was obvious or readily apparent, and clear under current law; (3) the error affected [the appellant's] substantial rights; and (4) either a miscarriage of justice, that is, actual innocence; or that the trial court's error seriously affected the fairness, integrity or public

reputation of judicial proceedings." *Alleyne v. United States*, 327 A.3d 472, 484 (D.C. 2024) (brackets and internal quotation marks omitted).

We see no basis for reversal based on the response to the second jury note because the trial court did provide further clarification approximately two hours later in response to the jury's third note. In other words, the issue before us is not the adequacy of the response to the second note in isolation but rather whether the instructions as a whole, including the response to the third note, adequately addressed the jury's question. *See generally, e.g.*, *Parker v. United States*, 249 A.3d 388, 400 (D.C. 2021) (court "must consider the instructions as a whole, and a single instruction may not be judged in artificial isolation") (citation and internal quotation marks omitted); *Jackson v. United States*, 645 A.2d 1099, 1105 (D.C. 1994) (considered as whole, initial instruction and reinstruction adequately informed jury of relevant legal principles).

We thus turn to the response to the jury's third note. Here too we conclude that Mr. Patschak failed to preserve an adequate objection. It is true that Mr. Patschak's counsel at one point suggested telling the jury directly that the entire event could not properly be considered as "accompaniment." The trial court never even tentatively or implicitly rejected that suggestion, however. Instead, there was further discussion, the trial court proposed telling the jury that the intent to steal had

to exist at the time of the taking, and Mr. Patschak's counsel expressly endorsed that approach.

Applying the plain-error standard, we see no plain or obvious error in the trial court's response to the jury's third note. The third note drew a distinction between a narrower requirement that the intent to steal exist at the time of the taking or a broader approach permitting conviction if the intent to steal existed during "the entire events." The trial court responded by telling the jury that the intent to steal had to exist "at the time" of the taking. The trial court appears to have intended the instruction to communicate the idea that the intent to steal and the taking had to exist at the same time rather than being separated by some time but occurring during the incident as a whole. The parties appear to have understood the instruction the same way. Under the circumstances, we conclude that the apparent understanding of the trial court and the parties was not unreasonable.

We can agree that in hindsight it would have been preferable to include a word like "exact," particularly given that the jury's second note had used that term. Nevertheless, the plain-error standard requires more than that this court in hindsight, and with the benefit of argument from counsel, can see a way in which an instruction could have been improved. *See generally Willis v. United States*, 271 F.2d 477, 480

(D.C. Cir. 1959) (rejecting idea that "'plain error' is any error plain enough to be perceived by hindsight").

Finally, we view this case as distinguishable from *Sanders v. United States*, 118 A.3d 782, 784 (D.C. 2015), upon which Mr. Patschak relies. Mr. Sanders was charged with assault with intent to commit robbery. *Id.* at 782. The jury was initially instructed that the intent to rob had to exist "at the time of the" assault. *Id.* at 783. The jury sent out a note asking what "at the time" meant and more specifically asking whether it would suffice if the intent to rob existed immediately before the assault. *Id.* Defense counsel asked that the jury be told that the answer to the latter question was no, but the trial court instead simply said "That is for the jury to decide." *Id.* We held that the trial court's response was erroneous and not harmless. *Id.* at 783-85. This case differs from *Sanders* in several critical respects. First, the jury's note in *Sanders* both asked for a further explanation of the phrase "at the time" and raised a specific scenario. *Id.* at 783. Second, the trial court gave absolutely no guidance to the jury in response, *id.*, whereas in the present case, the trial court made a reasonable effort to try to address the jury's third note. Third, defense counsel in *Sanders* clearly objected to the trial court's response to the jury note, so the plain-error standard was not applicable. *Id.*

In sum, we are unable to conclude that the trial court's failure to sua sponte include the term "exact" in its response to the third jury note was obvious error warranting reversal under the plain-error standard.

For the foregoing reasons, the judgment of the Superior Court is affirmed.

*So ordered*.